THE UNION CENTRAL LIFE INSURANCE COMPANY v. NORTON SMITH ET AL.

105 353
s 119 171

*Insurance companies—Authority of State agent—Action on bond— Advances.*

1. The bond of an insurance agent was conditioned for the payment over of all moneys which he should thereafter owe the company, either on account of advances to him or otherwise. In a suit upon the bond, the testimony of the defendants tended to show that, at a certain date, the agent notified the State agent of the company, who was charged with the duty of making said advances, that he would no longer work under his contract of employment, and that the sureties in the bond also notified said State agent, through a local agent, that they would no longer hold themselves accountable for the dealings of their principal; that thereupon said State agent assented to a new arrangement, under which future advances were to be made upon the personal credit of the agent. And it is held that, to this

105 MICH.—23.

extent at least, the relation of the State agent to the transaction was such as to make his acts binding upon the company.

2. The court instructed the jury that the company only had power to charge the sureties for advances to the extent of the payment of hotel bills, traveling expenses, and other expenses incident to the transaction of the company's business. And it is held that, assuming that the original contract continued, in the absence of any evidence showing bad faith on the part of the agents of the company in making the advances, or which tends to show that they were unreasonable in amount, the limitation as to the amount of advances ought not to have been made.

Error to Saginaw. (Edget, J.) Argued April 17, 1895. Decided May 21, 1895.

*Assumpsit.* Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Swarthout & O'Keefe*, for appellant.

*Harris & Kendrick*, for defendants.

MONTGOMERY, J. This is an action on an agent's bond, with the following condition:

"*Whereas*, the above bounden Norton Smith has been appointed by said company as their agent for the purpose of procuring applications for life insurance, and performing such other duties therewith as may be intrusted to him:

"Now, if the said Norton Smith shall pay or hand over all moneys belonging to said company which shall at any time be received by him, or for which he shall be liable, whether the same shall be or shall have been received by him personally, solely, or by, through, or together with any copartner, coagent, subagent, or other person, as well as that received thereafter, as also all moneys which hereafter he may owe said company, either on account of advances to him or otherwise, and shall faithfully discharge the duties as said agent, then this obligation shall be void, otherwise to remain in full force and effect; it being understood and agreed that this obligation shall not be annulled or revoked without the

consent of the above-named company, but shall be and remain in force so long as said Norton Smith shall continue to be agent of said company, and until all transactions under such agency shall have been fully adjusted and settled, and all liabilities of said Norton Smith by reason thereof shall have been discharged."

This obligation bore date May 11, 1889, and was required by a contract of agency between the company and Smith bearing date May 10, 1889, and which was to continue in force for the term of one year from date, subject to be terminated by the company for good cause, and with a proviso that it should not be binding upon the company until the bond had been furnished. The plaintiff offered testimony tending to show that advances were made to the agent from time to time, beginning with May 13, 1889, and ending on the 20th of November of the same year, amounting in the aggregate to $447.45, and that defendant Smith was entitled to credits amounting to $135.16, leaving a balance due the company of $312.29. The defendants then offered testimony tending to show that defendant Smith continued in the employment of the company under this contract until June 10, when he quit the employment, and gave notice to the State agent, Mr. C. C. Kelso, that he would no longer work under the contract, and could not, and that the bondsmen gave notice to a Mr. Howell, a local agent of the company at Saginaw, who in turn communicated the fact to the State agent, Mr. Kelso, the substance of which notice was that the sureties would no longer hold themselves accountable for the dealings of defendant Smith; that thereupon there was an agreement made between Mr. Kelso and Smith, by the terms of which Kelso agreed to advance to Smith $25 per week, which he was to receive in any event, and, if commissions at the rate of 50 per cent. on premiums exceeded the same, his compensation was to be increased to that rate, and that the advances made after June 10 were made under this

agreement, and that it was expressly agreed that the sureties were to be discharged.

It is strenuously insisted by the plaintiff's counsel that it is not shown that the State agent had authority to employ agents on behalf of the company. There was no direct evidence of authority to employ agents on the company's behalf, and at the charge of the company; but, in our judgment, the more important question is whether notice to the State agent of the new relation, and of the terms under which the advances would be received, if at all, was notice to the company. The circuit judge charged the jury as follows:

"If you should find that the State agent, under the testimony in this case, was vested with the general powers vested in State agents in the supervision of the business and agents in the State, and received remittances from the agent, or made advances to the agent, or that no one else had correspondence with the agent but him, then a notice to him is a notice to the company. I think the company is charged to receive notice through the State agent. My judgment is there was no need, in order to cease doing business under this contract, to bring the notice home to the central office."

We think this instruction correctly embodied the law. The question in the case was whether the advances which were made after June 10 were made in reliance upon the bond in suit. It seems clear enough that the agent through whom these advances were made had authority to receive notice that they *were not being received* under the original contract of hiring. Indeed, it becomes a question as to what the advances were for; and the State agent, as representing the company in making the advances, and presumptively possessing the authority also of withholding them, was bound to act in that matter upon the notice which he received directly from the agent. A different question might be presented if the agent were charged with withholding premiums collected. But such is not this case. The person charged with making advances not only had notice, as the

defendant's testimony tended to show, that the advances would not be received upon the credit of the bond in suit, but he further is shown to have assented to a new arrangement, by which they were to be made upon the personal credit of the agent. To this extent, at least, his relation to the transaction was such as to make his acts binding upon the company.

This is the principal question involved in the case, and, if we could be convinced that the jury determined the case upon this point, the other questions would not call for discussion. But the whole case was submitted to the jury, and among other instructions was the following, relating to the advances:

"The company only had the power to charge the sureties for advances to the extent of the payment of hotel bills, traveling expenses, and other expenses incident to the transaction of the company's business; and, if you find that the advances were made in excess of that extent, they cease to bind these sureties. You will ascertain, when you come to examine the account here, as shown by these vouchers, that advances were made from the 18th of June down to the 20th of November, and these advances amount to $447.45."

We think this instruction was erroneous. The bond itself contemplated that advances would be made to the agent. There is no evidence in the case, if it be assumed that the original contract continued, which shows any bad faith on the part of the agents of the company in making these advances, or which tends to show that they were unreasonable in amount. We think, under these circumstances, the limitation as to the amount of advances ought not to have been made.

There are numerous other questions raised in the record, but, we think, none which require special discussion, in view of the conclusion we have reached upon the two points referred to.

Judgment will be reversed, and a new trial ordered.

The other Justices concurred.