UNION CENTRAL LIFE INSURANCE CO. *v.* SMITH.

1. INSURANCE COMPANIES—AGENT'S BOND—ANNULMENT BY STATE
   AGENT—RELEASE OF SURETY—INSTRUCTIONS.
   An instruction, in an action by an insurance company upon
   a bond given by its agent, that the surety was liable thereon
   unless the company annulled or surrendered the instrument,
   is not misleading as indicating the necessity of some formal
   affirmative act on the part of the company, where in other
   portions of the charge the jury were told that the State agent
   might act for the company, and that, if he made a new ar-
   rangement with the agent, the surety would not be liable for
   sums advanced thereunder.

2. SAME—EVIDENCE—BOOKS OF ACCOUNT—VERIFICATION.
   In an action by an insurance company upon a bond given by
   an agent, the books of the company are admissible in evidence
   to show the balance due, where their correctness is testified
   to by the person who has supervision of them.

Error to Saginaw; Snow, J.   Submitted October 5,
1898.   Decided January 3, 1899.

*Assumpsit* by the Union Central Life Insurance Com-
pany against Norton Smith and James S. Kerns on an
agent's bond.   From a judgment for plaintiff, defendants
bring error.   Affirmed.

*Harris & Kendrick*, for appellants.

*John F. O'Keefe* ( *George W. Weadock*, of counsel ),
for appellee.

LONG, J.   This case was in this court at the April term,
1895, and reversed.   105 Mich. 353.   On the former trial
the defendants had verdict and judgment.   The facts are
fully set out in the opinion, and need be recited again only
so far as questions now raised may require.   In the
former trial the court directed the jury that:

"If you should find that the State agent, under the testimony in this case, was vested with the general powers vested in State agents in the supervision of the business· and agents in the State, and received remittances from the agent, or made advances to the agent, or that no one else had correspondence with the agent but him, then a notice to him is a notice to the company. I think the company is charged to receive notice through the State agent. My judgment is, there was no need, in order to cease doing business under this contract, to bring the notice home to the central office."

Plaintiff took exception to this charge, but the instruction was approved by this court. That was the principal question in the case on the former hearing. The point upon which the case was reversed related to another portion of the charge, as follows:

"The company only had the power to charge the sureties for advances to the extent of the payment of hotel bills, traveling expenses, and other expenses incident to the transaction of the company's business, and, if you find that the advances were made in excess of that extent, they cease to bind these sureties. You will ascertain, when you come to examine the account here, as shown by these vouchers, that advances were made from the 18th of June down to the 20th of November, and these advances amount to $447.45."

This court found, under the circumstances of the case as shown upon that trial, that "the limitation as to the amount of the advances ought not to have been made," and hence the reversal. On the last trial the plaintiff had verdict and judgment. The court charged the jury, as on the former trial, that notice to the agent was notice to the company.

The first point made by counsel for defendants in their brief is that the charge of the court compelled the jury to find against the sureties unless they found as a fact that the company, through Kelso, accepted the notice, and by some process discharged the bondsmen, and agreed that the bond should be done away with, making it necessary for the jury to find the fact that the company canceled

the bond by affirmative action.    Attention is called to the
following part of the charge to support this claim:

"I would say to you that, no matter whether Mr. Kerns
asked to be taken off the bond or not, unless the company
accepted it through Kelso,—that is, discharged the bonds-
men, and agreed that the bond should be done away with,
and afterwards Smith should go on and receive this money
(if you find he received any money),—then of course the
bondsmen should not be released.    A man could not be
released from the bond by simply saying he wanted to be
released; the other party must consent to it.    Unless the
company consented to Kerns being released from the
bond, he would not be released, and the bondsmen would
be liable, providing Smith went on under the contract
and bond as made.    For illustration:    If I should become
surety on another man's bond for his faithful performance
of certain conditions within the bond, and afterwards I
should have some reason,—no matter what the reason,—
and should go to the party who had the bond, and say I
wanted to be released from the bond, didn't want to be
held on it, and the other party did not accept the proposi-
tion, did not release me, and the party for whom I had
become surety went on with the business just the same, I
would not be released, because it takes both parties to
make a new arrangement."

If this part of the charge stood alone, there would be
some force in the claim made, but the other portions of
the charge must be taken in connection with it.    It ap-
pears that, after this part of the charge had been given, a
juror asked:

"Would it be necessary for Mr. Kelso to forward the
application to be released from the bond to the head office
in Ohio?
"*The Court:* No.
"*Q.* He would do that himself?
"*The Court:* No; Mr. Kelso could contract the busi-
ness, so far as that is concerned, for the company, he
being the State agent."

The court had before that, at the request of defendants'
counsel, charged the jury as follows:

"*First.* Under the testimony in this case, the company

was charged to receive notice through the State agent, Kelso, in order to cease doing business under this contract. It was not necessary to bring the notice home to the central office.

"*Second.* The agent, Kelso, through whom these advances were made, had authority to receive notice that they were not being received under the original contract, and the State agent, as representing the company in making the advances, and presumptively vested with authority also to withhold them, was bound also to act in this matter from the notice he received from defendant Smith. If you find that Kelso received notice from General Agent Howell that the bondsmen had refused to be longer held, and was informed by Smith that no more advances would be received by him under the written contract, and thereafter made advances under some new arrangement with Smith, the defendant Kerns could not be held in this action for the same; that is, if he received the money under some other arrangement.

"*Third.* Mr. Kelso, the person charged with making the advances, had notice, as the defendants' testimony tends to show, not only that the advances would not be received upon the credit of the bond in suit, but that he assented to a new arrangement upon which they were to be advanced upon the personal credit of Smith. To this extent his relations to the transaction were such as to make his transaction binding upon the company. So, if you find that Smith quit work under this contract in June, and Kelso received notice of the same, that the bondsmen would no longer be held, that Kelso came to Saginaw, and entered into a new arrangement with Smith without the knowledge or consent of the defendant Kerns, whereby the advances thereafter were made, not upon the original contract, but upon the new arrangement, the defendant Kerns could not be held for such advances.

"*Fourth.* The defendant Kerns is not liable in this suit for any advances made or business done between Smith and the company, or between Smith and Kelso, under a new contract, or under a modification or change in the written contract."

But counsel contend that the jury, having been out all night, and having failed to agree, were again charged by the court in such manner that they were again led to believe that defendant Kerns would be held liable as a

surety unless the company went through the formality of discharging the bond. That portion of the charge is as follows:

"I charge you that, unless the company annulled or surrendered the bond to which I have called attention, it will continue in force, and be binding upon the principal and sureties therein, for the period of one year. If, while said defendant Smith was acting as special agent of the plaintiff,. during that period he became indebted to the company on account of advances to him, and if such indebtedness has not been paid, then said company would be entitled to a verdict against Smith and Kerns for the amount owing by said Smith to the plaintiff. * * * If it was a new arrangement, and it was distinctly understood between Smith and Kelso that the old arrangement should be done away with, and he should act under the new arrangement, that would be proper."

We think that the jury were not misled by this charge. They must have well understood, from what the court had said in other portions of the charge, that what the court meant by the words, "unless the company annulled or surrendered the bond," was that, Kelso being the State agent, his act was the act of the company, and, if the jury found that he annulled or surrendered the bond, the defendants would not be liable; and if they found that the arrangement with Kelso was what the defendants claimed, and that Kelso agreed that Smith should go to work under 'the new arrangement, and he did so, Kerns could not be bound to answer for moneys advanced under the new contract. The court in several instances stated to the jury that "it was not-necessary, in order to cease doing business under the contract, to bring the notice home to the central office;" that "notice to Mr. Kelso would be notice to the company."

It is further contended that, the suit being upon the bond to recover the balance claimed to be due, it was the duty of the plaintiff to show that balance by the best evidence, and that the best evidence was not introduced on that subject. It would be of no profit to set out the testi-

mony in full upon this point. It does appear, however, that 21 vouchers, signed and delivered by defendant Smith from week to week between the 10th day of May and the 20th day of November, were put in evidence by the plaintiff. In addition, plaintiff introduced the policy register kept in defendant Smith's own handwriting. The company also introduced its own policy register and its journal and ledger, and Mr. Kelso testified to the correctness of the books, and that the entries were made at his dictation. Objection was made to the introduction of the books in evidence, and the objection overruled. The court admitted them, saying: "Well, he [Kelso] says he knows they are correct; he had the supervision of them, and they were the entries made under his instruction and direction." These books were competent evidence, and properly admitted. 3 How. Stat. § 7526; *Montague* v. *Dougan*, 68 Mich. 98; *Lester* v. *Thompson*, 91 Mich. 245.

Some other questions are raised in regard to the admission of evidence against defendants' objection, and also in the rejection of certain evidence; but we think no error was committed, and we will not discuss those questions.

Some questions are also raised upon the refusal of the court to give certain requests tendered by counsel for defendants, and in the modification of some of them, as well as in the giving of the requests tendered by the plaintiff. We have examined those questions, and find no error.

The judgment must be affirmed.

The other Justices concurred.