REYBURN v. QUEEN CITY SAVINGS BANK & TRUST CO.

(Circuit Court of Appeals, Third Circuit.   May 17, 1909.)

No. 17.

**1.** EVIDENCE (§ 354*)—BOOKS OF ACCOUNT—RECORDS OF BANK.

Entries in the books of a bank, showing discounts or debits and credits from day to day, are admissible in evidence in favor of the bank to establish the time of a transaction there recorded, where it is shown that the books are books of original entry, or as nearly so as possible, and such as the business of the bank requires, and upon the faith of which such business is transacted, and when the entries are duly proved by the persons who made them as having been made by them on the dates shown in the regular and usual course of their employment.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1432–1483; Dec. Dig. § 354.*]

**2.** BILLS AND NOTES (§ 371*)—ACCOMMODATION PAPER—REQUISITES.

Promissory notes made and indorsed and discounted by the payee, under an agreement between them that the maker and indorser shall each receive one-half the proceeds and pay one-half the notes, are not accommodation paper, and do not give the maker the character or rights of an accommodation maker, to affect the status of a bona fide purchaser for value.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 964; Dec. Dig. § 371.*]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 163 Fed. 597.

John C. Bell, for plaintiff in error.
Julius C. Levi, for defendant in error.

Argued before GRAY and BUFFINGTON, Circuit Judges, and BRADFORD, District Judge.

GRAY, Circuit Judge.   In the court below, suit was brought by the defendant in error (hereinafter called the plaintiff) against the plaintiff in error (hereinafter called the defendant), on certain promissory notes made by the defendant, of which plaintiff claimed to have been the indorsee and bona fide holder for value.   The case having been pleaded to issue, the same, under an agreement and stipulation in writing between the parties, came on to be tried before the court without a jury.   At the conclusion of the trial, the learned judge of the court below made certain findings of fact and law, upon which he directed judgment to be entered in favor of the plaintiff.   These findings, which, by exceptions duly made and sealed, are included in the record, are as follows:

J. B. McPherson, District Judge.   This is an action brought by the plaintiff as endorsee, against the defendant as maker, of two promissory notes for $5,000 each, due at four months from Oct. 20 and 25, 1906, respectively.   The case having been submitted to the court without a jury, I find the facts to be as follows:

1. In the fall of 1906, the defendant was in need of money to carry on a business enterprise in which he had an interest, and in order to raise the needed funds he agreed with the Union Potteries Company, an Ohio corporation, through the agency of a broker in New York City, to make five prom-

issory notes of $5,000 each. These notes were to be indorsed by the Potteries Company and negotiated wherever the money could be obtained, and the proceeds were to be divided equally between the Potteries Company and the defendant, by whom also the liability upon the notes was to be equally borne. The notes were duly executed toward the end of October and were placed in the broker's hands to be negotiated. Certain circumstances, which it is not necessary to detail, aroused the defendant's suspicions concerning the fairness and good faith of the transaction to which he had thus committed himself, and he took steps which resulted in the return to him of three of the notes. This action relates to the remaining two.

2. The notes in suit were offered to the plaintiff for discount by the Potteries Company about October 30th, and on that date the plaintiff addressed the following letter to the defendant:

"Mr. John E. Reyburn, Philadelphia, Pa.—Dear Sir: We have this day been offered some 4 mos. paper of yours by the Union Potteries Co. for discount, they claiming that this paper was given by you in payment for stock sold to you in their company. Would you be kind enough to telegraph us at our expense whether this is the situation? And confirm same by letter.

"Hoping that you will give us the desired information, we remain,

"Resp. yours,          The Queen City Savings Bank & Trust Co.,
                               "Ernst Von Bargen, Sec'y."

The defendant replied under date of November 2d:

"Dear Sir: I have your favor of the 30th ult. and in reply beg to say that there must be some misunderstanding about the transaction in Union Potteries Co., as I have no understanding about taking shares of stock in that company. I did not wire because I thought it was better to communicate in writing with you.          Yours very truly,          John E. Reyburn."

Thereupon the plaintiff, on November 5th, addressed a second letter to the defendant:

"Dear Sir: We are in receipt of your favor of the 2nd inst. and in reply will say that we do not understand your letter.

"We were offered two notes—one of October 20, 1906, and the other of October 25, 1906, for four months each at five thousand ($5,000) dollars each, signed by you, by Mr. Hart, vice president of the Union Potteries Co., who claims that these notes were given in payment of stock in either the Union Potteries Co., Pittsburg, or the Huntington China Co., Huntington, W. Va., or both.

"In your letter you say you have no understanding about taking stock in the company. We wish you would let us know if you gave these notes for some other reason and whether they are your bona fide notes, and will be paid at maturity.

"We are sorry that we are putting you to all this inconvenience, but we would like to be on the safe side before we discount these notes for the Union Potteries Co.

"Thanking you in advance, we remain,

    "Yours very truly,          Ernst Von Bargen, Secretary."

This communication the defendant answered as follows on November 8th:

"Dear Sirs: I beg leave to acknowledge receipt of your letter of the 5th inst. regarding my two notes dated October 20th and October 25th, for $5,000 each. I desire to state in reply thereto that since writing you in answer to your letter of October 3d, the difference between the Union Potteries Company and myself regarding stock has been satisfactorily adjusted.

"The notes in question will be paid at maturity.

"Very truly yours,          John E. Reyburn."

In reliance upon this correspondence the plaintiff discounted the two notes on November 12th and placed the proceeds, namely, $4,885, on each note, to the credit of the Potteries Company.

3. In consequence of the defendant's suspicions, to which reference has been made in paragraph 1, he determined to stop the negotiation of the remaining two notes of the series, if possible, and on the evening of November 14th, he sent the following night telegram to the plaintiff:

"Have discovered fraud since writing. Do not discount notes bearing my signature."

This telegram was received by the plaintiff before banking hours on November 15th and was replied to as follows:

"Notes already discounted on strength of your letter November 8th."

This reply was confirmed by a letter of the same date.

4. On November 12th, the balance to the credit of the Potteries Company on deposit with the plaintiff was $1,778.14. This balance was increased by the discount of the notes to $11,548.14. On November 12th, the Potteries Company drew a check for $2,500 upon this balance; on November 13th, a check for $1,000; and on November 14th, two checks for $1,250 and $4,000 respectively. These checks were duly honored by the plaintiff.

5. There is no evidence of fraud or bad faith on the part of the plaintiff, or of any knowledge on its part of fraud or bad faith on the part of the New York broker or of the Potteries Company. The defendant received no consideration for the notes, either at the time of their execution or afterwards, and received no part of the proceeds of the discount; but there is no evidence, if the fact were important, that the plaintiff knew of the want of consideration or of the agreement that the defendant was to have one-half the proceeds of the discount.

6. Before suit was brought, the defendant refused to pay the notes either in whole or in part.

Upon these facts it seems to me that the law is settled, and that the following propositions govern the case:

1. The notes in suit are accommodation paper, and the defendant is the accommodation maker thereof.

2. The plaintiff is the bona fide holder thereof for value and before maturity.

3. Being accommodation paper, however, the mere discount of the notes, and the credit of the proceeds to the account of the Potteries Company, were not equivalent to parting with value.

4. The defendant was entitled to cancel his obligation by proper notice given to the plaintiff before it actually parted with value by honoring the checks of the Potteries Company.

5. As a result, the plaintiff is entitled to recover $6,971.86, with interest from, say, February 22, 1907.

In finding these facts, I have taken into consideration the depositions of the plaintiff's employés, and the loose leaf of the ledger that was produced at the trial, believing the depositions and the loose leaf to be competent evidence. The numerous decisions in favor of its competency seem to me to be founded on excellent reason. The business of a bank is dealing in money, and the same reasons that have been found sufficient to warrant the admission of a merchant's books in evidence to prove a sale and delivery of goods apply in the case of a banker's books to prove his transactions in money with a customer. Moreover, the necessity of the situation furnishes another reason for admitting such entries as competent, but of course, not conclusive, evidence of the dealings to which they relate. In the multiplicity of transactions in a banking institution, it is practically impossible to have better evidence; and the admissibility of the entries may therefore stand also upon the ground that they are ordinarily the best evidence of which the case admits. To the admission of the depositions and the entries referred to, the defendant is granted an exception.

One word more may be said concerning the payment by the plaintiff of $2,500 on November 12th. The Potteries Company and the Huntington China Company were closely allied corporations, being indeed, practically identical. The plaintiff was the holder of certain bonds of the China Company. As partial security for their payment, it was agreed by the Potteries Company, on October 26, 1906, as follows:

"Cincinnati, O., Oct. 26, 1906.

"The Queen City Savings Bank & Trust Co., Cincinnati, Ohio—Gentlemen: For valuable consideration received, we hereby agree and bind ourselves to deposit twenty-five (25%) per cent. of all the commercial business paper discounted by you, for the account of the Union Potteries Company, to a special

fund to be called 'Huntington China Company, Huntington, W. Va., Sinking Fund Account,' and it is hereby agreed the same shall not be subject to check, but shall be held to apply on the forty thousand ($40,000.00) dollars Huntington China Company, Huntington, W. Va., bonds held by you, it being understood that upon this sinking fund balance, you are to pay us interest at the rate of three (3%) per cent. per annum.

"Yours very truly          Union Potteries Company.

"F. W. Fowler, President.

"Max Hart, Vice President."

To this the China Company agreed:

"Cincinnati, O., Nov. 12, 1906.

"Mr. F. W. Fowler, Pres't. Huntington China Co., Pittsburgh, Pa.—Dear Sir: Enclosed we hand you authority signed by the Union Potteries Company, Max Hart, vice president, authorizing us to charge back any paper discounted for the Union Potteries Company, which, when due, would fail to be paid, either to the account of the Union Potteries Company or the Huntington China Company Sinking Fund.

"We would be pleased to have you sign this authority, as the Huntington China Company, per yourself as president."

To this the China Company replied on the same date:

"The Queen City Savings Bank & Trust Co., Cincinnati, Ohio—Gentlemen: In regard to the sinking fund account which you have credited to the Huntington China Company, would state that, in the matter of discounting our paper, in case any of it is not paid at maturity, and it is necessary to charge same to our account, and should our account not have sufficient balance to justify such charge, that you are authorized to charge such balance to the sinking fund account of the Huntington China Company.

"Yours very truly."

It was suggested upon the argument, although I did not understand the position to be much insisted upon, that the plaintiff was bound by this agreement to apply the $2,500, at all events—if not the whole $4,700 which it appears was in the sinking fund account—in relief of the defendant's obligation upon these notes. In my opinion the suggestion does not need an elaborate reply. The defendant was not a party to the agreement, whatever its scope may be, and has no right to avail himself of its terms. In the view most favorable to his interest, the best that can be said about the agreement is, that it furnished the plaintiff with an additional security for the payment of such commercial paper as might be discounted for the Potteries Company, and that the defendant may have a valid claim to subrogation against this sinking fund after he has discharged his obligation to the plaintiff upon the notes in suit. In coming to this conclusion, I have not considered at all the letter of June 3, 1907.

The clerk is directed to enter a finding in favor of the plaintiff in accordance herewith, upon which judgment may be entered in due course.

The above and foregoing testimony and evidence set forth and contained in this the defendant's bill of exceptions, is all the testimony and evidence that was produced, given or heard at the trial of said issue and cause as well as all the testimony and evidence taken by deposition or on commission and taken into consideration by said judge in making his findings in said cause.

And thereupon, the counsel for the said defendant did then and there except to the aforesaid admission of the aforesaid evidence offered by the plaintiff and to the finding and opinion of the said judge that plaintiff paid out the said moneys before the receipt of notice from defendant of cancellation and that there was competent evidence to support such finding of fact, and inasmuch as the said evidence, finding and opinion so excepted to do not appear upon the record.

The said counsel for the said defendant did then and there tender this bill of exceptions to the said portion of the findings and to the opinion of the said judge and requested the seal of the judge aforesaid should be put to the same, according to the form of the statute in such case made and provided. And thereupon the aforesaid judge at the request of the said counsel for the de-

fendant did put his seal to this bill of exceptions, pursuant to the aforesaid statute in such case made and provided, this 8th day of October, 1908.

John B. McPherson.  [Seal.]

The defendant, during the trial, objected to the competency of certain testimony offered by the plaintiff, and duly excepted to the admission of the same.  Upon this and certain findings of the court founded thereon, assignments of error have been made, which have raised the questions discussed at the bar.  The court below has found, as we have seen, that there was no evidence of fraud or bad faith on the part of the plaintiff, or of any knowledge on its part of fraud or bad faith on the part of any of the intermediate parties to the notes, and that plaintiff was the bona fide holder thereof, for value and before maturity; yet it also found that the notes were accommodation notes, the mere discount of which and the crediting of the proceeds to the account of the Potteries Company, the indorser, were not equivalent to parting with value, for the purposes of this case.  The court therefore concludes that the defendant, as an accommodation maker, was entitled to cancel his obligation, by proper notice given to the plaintiff before it actually parted with value, by honoring the checks of the Potteries Company, and as a result, that the plaintiff was entitled to recover, not the full amount of the notes, but, only the aggregate of the amounts paid out to the Potteries Company, on checks drawn upon the proceeds of the notes placed to its credit.

Assuming that the fact of such payments was found by the court upon competent and sufficient testimony, the defendant below could hardly complain of the resulting conclusion reached by the court.  In fact the defendant's counsel agrees with the court, in its finding that Reyburn was an accommodation maker, and that he was entitled to revoke his obligation on the paper, by proper notice given the bank, even after the bank had discounted the same and passed the proceeds to the credit of the indorser, and that the bank could recover, as a holder for value, only to the extent of payments made prior to the receipt of such notice.  But counsel for the defendant contends that the evidence of such payments by the bank, prior to said notice, as offered by the plaintiff and admitted by the court, was incompetent and should have been rejected, and that therefore the court erred in its findings as to such payments, and that the judgment on that account should be reversed.

We think, however, that the court was justified in the reception of the testimony objected to, and has given satisfactory reasons therefor.  Upon examination of this testimony, we find that the discount clerk of the bank testified to his employment as such, and that he kept a record of all paper discounted by the bank, and kept the books in connection therewith; that the discount register is a complete record, giving the names of the drawer and maker, etc., and an exact copy of the note; that if the note is discounted, it is put into the discount ledger, and from that a ticket is made, crediting the account of the customer for whom the paper is discounted, with the amount thereof, less the discount.  He also testified that this discount register was in his possession, and he then produced it; that the entries were in his handwriting, made in the usual course of business of the bank, and that the

entries under date of November 12th, relating to the notes in question, were made at the time they purported to have been made; that the book was a book of original entries of the Queen City Savings Bank & Trust Company, of all discount transactions. He then, producing the record, testified to the particular entries made by him, showing the discount on November 12th, of the notes in question, with all necessary names and dates, together with copies of the notes. He also gave the same testimony in regard to the discount tickler and discount ledger, kept by him in the plaintiff bank, and produced the same, with their entries on November 12, 1906. As this testimony was taken upon commission, a copy of the account, certified to by the commissioner, was attached to his return. So also of the same character was the testimony of the clerk who kept the individual ledger. He testified of his own knowledge that the proceeds of the discounts were credited by him to the Potteries Company in the individual ledger, and a copy of the leaves containing these entries was certified by the commissioner and attached to his return. He also testified that all the entries in this account were made by himself, both as to debits and credits, and that the book was regularly and fairly kept in the transaction of the usual business of the bank from day to day.

Plaintiff strongly objects that these payments by the bank out of the proceeds of the notes in question, credited to the Potteries Company, could not be proved by these entries on the bank's books, because, being cash items, they are not within the rule by which shop books and tradesmen's books of account, regularly and fairly kept as books of original entries, supported by the oath of the plaintiff himself, are admitted as prima facie evidence of the pertinent entries therein contained. The rule in regard to the admission of books of original entries, supported by the oath of the party to prove the transactions therein contained, is a very old one in this country, and existed in England as an ancient rule of the common law. It was adopted by courts as a rule of necessity, as in many cases without it the administration of justice would have been at fault. It was recognized as a rule of convenience that facilitated the ordinary transaction of business, and has found a secure place in the jurisprudence of this country, whether as a doctrine of the common law of evidence, or as an enactment of the statute law. The reasons upon which this rule rests, strongly support the admission in evidence of the book entries of those engaged in banking, or whose principal business is in money and cash transactions, whether as individuals or as corporations. The same necessity and the same convenience commend the rule in the one case as in the other.

The entries in the books of the bank thus made and thus proved, were admitted in the court below over the objection of the defendant, as evidence tending to show the discount of the notes in question, the crediting of the proceeds to the account of the Potteries Company, the indorser of the same, and the withdrawals by the Potteries Company of the amounts referred to by the learned judge of the court below, as constituting the payments made by the bank on account of these notes, prior to the 15th day of November, the date of the reception of the notice from the defendant.

Counsel for the defendant, while admitting that such payments would be pertinent to the issue, strongly objects to the competency of this mode of proof, on the ground that the rule of evidence, by which shop books and tradesmen's books are admissible in evidence, does not apply to entries of cash items. It may be admitted that this exception to the rule is as old as the rule itself, which referred originally only to items of purchase and sale, or of work and labor performed, which made up so large a part of the daily business of a community. Items of money loaned or money advanced were exceptional, and ordinarily were easily proved by receipts or other evidence than the book account. In the development of the shop book rule, that has taken place in this country, and later in England, some modification as to the exclusion of such items has been made, to which we need not now refer. It is only necessary to say that the reasons upon which books of original entry, as to sales of merchandise and as to work and labor performed, were admitted, has been long applied to the books kept by banks and those whose business is altogether or chiefly concerned with the care of money, and in dealing with debits and credits for the same. Indeed the reasons of necessity and convenience are stronger in the latter case than in the former, and the fundamental ground of circumstantial trustworthiness attaching to the entries made in regular course by a large banking corporation, is more apparent than in the cases originally embraced within the rule as to shop or tradesmen's books. A large banking institution must of necessity be organized in departments, and the integrity of its transactions must depend on the accuracy and fidelity with which those in charge of the records thereof perform their work. Indeed the whole business of such an institution may be said to rest on properly made entries in proper books, and that such entries are, in a sense, themselves ultimate facts to be received under certain circumstances as probative facts, and both the necessity and convenience of the business world require that under a wise judicial discretion they should constitute legal prima facie evidence of the transactions to which they relate. They constitute, in most cases, the best evidence that is attainable, and as a matter of fact, such entries when regularly and fairly kept in the ordinary course of business, regarding debits and credits from day to day, are more reliable than fallible human memory could possibly be, as to any given transaction which they purport to record, especially where a considerable interval of time has elapsed between the giving of the testimony and the transaction referred to.

Of course judicial discretion in every such case is appealed to, to see that such testimony, when offered, has been safeguarded by such an environment of circumstances as will give it the requisite circumstantial trustworthiness. The entries accordingly must have been made in the regular course of business, and must be testified to, if possible, by the entrant, who must be shown to have been the one whose ordinary business it was to make such entries, and that such entries are to all intents and purposes, or as nearly as possible, original entries, and such as the business of the bank requires, and upon the faith of which such business is transacted. Take, for instance, the case before us. We have the entries from the discount register and the discount ledg-

er, the first named being undoubtedly a book of original entries, and we have the oath of the clerk who made the same. We have also the individual ledger account, in which the credits to the Potteries Company were made upon written information from the discount clerk, and the debits against that account upon the same page, entered as sworn to by the testifying clerk in charge of the book. This book, too, was as nearly as possible a book of original entries; at least, there was no other book in which a specific charge was made against the Potteries Company. These debits were necessarily made, either from the checks themselves of the Potteries Company, or memoranda furnished by a paying teller, but they were made in due course of business and regularly made by the entrant who swore to them and whose business it was to make all such. No paying teller could possibly testify as to the date and amount of a particular payment, and the bank itself must depend upon the fidelity and accuracy with which the entries in question were made.

Wigmore, in his excellent work on Evidence, says:

"The practical impossibility, on grounds of mercantile inconvenience of producing all the clerks, salesmen, teamsters, or the like, who have contributed their knowledge in making up the items of voluminous accounts, is by some courts recognized as a sufficient ground for nonproduction. * * * The policy of these rulings, so far as it exempts from the production of all but one verifying person, on the ground of mercantile inconvenience is deserving of common adoption."

A fortiori, should such a policy apply in proving the daily debit and credit transactions of a bank. Johnson v. Farmers' Bank, 1 Har. (Del.) 117; Meighen v. Bank, 25 Pa. 288; Town of Concord v. Concord Bank, 16 N. H. 26.

In addition to the testimony of the entrant clerks, above referred to, the vice president and secretary of the bank was called as a witness, and testified that he was the general supervisor of the business of the bank, and kept in touch with it all as it was transacted. He produced the original sheets from the books of the bank, containing the entries already testified to by the clerks keeping the same, certified copies of which were attached to the return made by the commissioner who took their testimony. He testified to being familiar with these entries, and upon their faith was willing to swear, as he did swear, that the withdrawals by the Potteries Company of certain sums of money out of the proceeds of the discounted notes, between the 12th and 14th of November, were actually made before reception of the telegram received from the defendant on the morning of the 15th. On cross-examination, however, he testified that he relied entirely upon these entries, and had no independent memory of the facts therein stated. But such testimony from the active business manager of the bank only emphasizes the necessity of admitting these book entries as prima facie evidence of the payments to which they refer. It was this necessity which properly appealed to the discretion of the trial judge, and it was, as said by him, the best evidence of which the nature of the case admitted. "When it is a mere question of whether provisional confidence can be placed in a certain class of statements, there cannot profitably and success-

fully be one rule for the business world and another for the court-room." Wigmore on Evidence, § 1530.

Continental Bank v. First Natl. Bank, 108 Tenn. 374, 68 S. W. 497, is quoted with approval by the writer to whom we have just referred, as follows:

"We think it not necessary that the bookkeeper who made the entries should be examined as to their correctness. At most he could only testify that the entries made by him are true entries of transactions reported to him by others. In other words, he could only testify that he wrote down what others told him. The court knows, as a matter of common information, that there are many persons in the employ of banks, and each has his different department, and each transaction passes through the hands of several—it may be, of many—persons. We take a deposit, for instance, it goes into the hands of the receiving teller, thence into the hands of a journal clerk, thence to the individual bookkeeper, or such other officials as perform the functions of these officers. When it reaches the hands of the bookkeeper, who makes the final entry, which stands as the true statement between the bank and depositor, it has gone through the hands of a dozen parties, perhaps; and the last party only records what comes to him through so many hands, and knows nothing, it may be, of the actual transaction. It would seem that the cashier, whose function it is to overlook all transactions at the counter and over the books, and test each transaction through all its stages, would be the person most competent to produce the books and vouch for their accuracy."

See, also, Fielder v. Collier, 13 Ga. 499, and the quotation from the opinion of Lumpkin, J., made by the same writer; also, Nelson v. Bank, 16 C. C. A. 425, 69 Fed. 798; 1 Morse on Banking, § 295.

But counsel for the defendant further contends that, however this may be, plaintiff's books are inadmissible to prove money paid to a third person. This proposition is not applicable to the present case. The transaction here testified to is not res inter alios acta, but a transaction between the plaintiff and defendant in this respect; i. e., the defendant having notified plaintiff not to discount his notes offered by the Potteries Company (or pay the proceeds of the discount to the said company), the plaintiff is showing that it has already paid certain amounts to the Potteries Company. This is the vital issue between the plaintiff and defendant. But again, it is to be noted that the only other evidence open to the plaintiff to prove the withdrawals of this money by the Potteries Company before the reception of said notice, was that of the proper officer of that company, who offered the notes for discount, one Hart. He was not called or produced by the plaintiff, but was subpoenaed and attached for nonappearance by the defendant, and an affidavit of one Miller was introduced by the defendant, in which the affiant swore that he had had a conversation with Hart, in which Hart had said that no money had been drawn out from the plaintiff bank by the Potteries Company until long after the date of the notice in question. In order to avoid a continuance, plaintiff stipulated that Hart would have so testified if he had been produced as a witness. This testimony, defendant relies upon to prove his side of the issue, as to there having been no payments by the bank out of the proceeds of the notes in question until after the date of the notice. Surely no court would tolerate the infliction of such a hardship upon the plaintiff in this case, as to prevent its resort to the best evidence attainable to con-

trovert such testimony on behalf of the defendant. In this conflict of testimony, the court below was required to decide to which it would give credence, and .we do not feel called upon to review that decision.

As the writ of error in this case was sued out by the defendant below, it is not necessary to discuss the contention of the plaintiff below and defendant in error, that, as soon as the bank had discounted the defendant's notes and passed their proceeds to the credit of the Potteries Company, it became a bona fide owner and holder of these notes for value; and that no notice thereafter of fraud between the defendant and the payee of the notes, or attempted revocation by him as accommodation indorser, could affect plaintiff's legal right to demand payment of these notes at maturity.

It should be observed, however, that the learned judge of the court below found, as a conclusion of law, from the facts testified to, that the defendant was an accommodation maker of the notes in question, and that as such, he had the right to cancel his obligation thereon at any time before plaintiff had parted with value for the same. A careful examination of the testimony convinces us that this conclusion of law is unwarranted by the evidence disclosed in the record. The defendant himself testified that he was engaged in a business enterprise, in which he needed some money from time to time, and various persons had approached him with offers of accommodation, and among them was the representative of the Union Potteries Company; that after looking up through the various mercantile agencies, he found that the said company had a good rating, and that he decided to conclude the arrangement which was, that he was to receive one-half and the Union Potteries Company one-half of the proceeds of the notes, which he made to their order, when discounted. It is true that he testified that he did not receive the one-half of the proceeds, but this default could not have occurred until after the discount of the paper, and could not affect the status of plaintiff as a bona fide holder of the notes for value. The paper thus issued was very far from being accommodation paper, and could not give to the defendant the character or rights of an accommodation maker. But this is not all. The correspondence by mail and telegraph, which took place between the plaintiff and defendant prior to the discount of the notes, would seem clearly to estop defendant from claiming such rights, or denying his liability on the notes. This correspondence is set forth by the learned judge of the court below in his findings of fact, above quoted.

It is impossible, however, as the case is now presented to us, to do more than affirm the judgment of the court below, and it is so ordered.