## THE J. S. WARDEN.

(Circuit Court of Appeals, Third Circuit. December 26, 1914.)

No. 1852.

1. **EVIDENCE** ⬅➡**333—ADMISSIBILITY OF MEMORANDA—OFFICIAL REPORTS OF GOVERNMENT EMPLOYÉ.**

A dredge, employed in dredging the channel of a river under contract with the United States, was on several occasions caused to break the spuds by which she was anchored by the swell from a passing steamer, resulting in expense of repair and loss of time. In a suit to recover the damages, a United States inspector of engineering, in charge of the work and stationed on the dredge, testified to the facts respecting the breaking of the spuds and the speed and nearness of the passing steamer, but was unable to testify as to the dates. In his employment he was required to file daily reports giving the progress of the work, and in such

reports he noted the delays caused by the breaking of the spuds and their replacement. *Held*, that it was not error to admit in evidence the entries of the dates on which such occurrences were noted, which the witness testified were in his own handwriting, made on the dates shown, and were correct, although he could not testify to the dates from present recollection, even when refreshed by reading his entries.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1247–1257, 1259–1265; Dec. Dig. ☞333.]

2. WITNESSES ☞255—REFRESHING MEMORY—MEMORANDA MADE BY ANOTHER.
A witness may be permitted to refresh his memory by the use of a written memorandum, although it was not made by himself, if he saw it while the facts stated therein were fresh in his recollection, and if he knew that the memorandum as then made was correct.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 874–890; Dec. Dig. ☞255.]

Appeal from the District Court of the United States for the District of New Jersey; Joseph Cross, Judge.

Suit in admiralty by the Newark Meadows Improvement Company against the steamship J. S. Warden; the Beebe Transportation Company, claimant. Decree for libelant, and claimant appeals. Affirmed.

Chauncey I. Clark, of New York City, for appellant.
Edw. W. Norris, of New York City, for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. It is averred in the libel filed in this case that the libelant was the owner of a dredge, engaged under contract with the United States in deepening and widening the channel of the Passaic river in the state of New Jersey, and that upon six dates therein named, while the libelant's dredge was anchored in places of safety by means of spuds or long timbers, the steamship J. S. Warden passed the dredge, producing swells which caused the anchored dredge to surge at her spuds and to break them, for cause whereof negligence is charged in the navigation of the steamship: (1) In not keeping a sufficient distance from the dredge; (2) in passing close to the dredge at a high and dangerous rate of speed; and (3) in not slowing down or heeding warnings given from the dredge—and damages are sought for the cost of installing new spuds and the loss of time consequent thereupon.

Damages were claimed to have been sustained on six separate occasions, for each of which a separate claim was made. The first, second, and sixth claims were dismissed. This appeal relates only to the third, fourth, and fifth claims, upon which the court found for the libelant. The errors assigned, when classified, extend, first, to the sufficiency of the evidence upon which the court made its finding; and, second, to the admissibility of certain of the testimony. A condensed statement of the testimony will be sufficient to dispose of the first ground of error.

In proof of the negligence charged to the steamship J. S. Warden, the libelant produced testimony as follows: At the points of the river at which the spuds were broken, the channel was from 200 to 300

feet wide, at one side of which the dredge was anchored. The steamship J. S. Warden was an excursion boat plying up and down the Passaic river several times daily. While rigidly anchored at her stations, the dredge was passed by the steamship at different times within distances variously estimated from 10 feet to 200 feet, at her highest rate of speed, which was about 12 miles an hour, causing great swells to roll toward and break against the dredge, with the result that the dredge rose and fell with the inflow and outflow of the swells, and surged backward and forward against her spuds, and broke them. Before each occasion of damage to her spuds, warnings were given the steamship by whistle from the dredge, or by her captain calling from her deck. In addition, written complaints were forwarded to the captain and the owner of the steamship, in response to which no reply was made, nor attention given. That the spuds were broken when the dredge was rocked by the swells from the steamship J. S. Warden was well established by the evidence, as likewise was the cost in money and time expended in replacing them.

Opposed to this testimony, evidence for the steamship was produced, tending to prove that she passed the dredge at a rate of speed as low as 5 or 6 miles an hour; that upon occasions she slowed down, maintaining only steerageway; and that there was another steamship upon the river, namely, the Majestic, which was a faster boat, and which, upon its daily trips down the river, preceded the steamship Warden in passing the dredge only by a few minutes. It was maintained that the injury to the dredge might as readily have been occasioned by the swells from the Majestic as by those from the Warden, and that upon the libelant was the burden of affirmatively proving that the damage was caused by the swells from the Warden.

Without reviewing the testimony or reconciling its conflict in this opinion, it is sufficient to say that upon the testimony offered and received we are satisfied that the libelant sustained the burden of proving the negligence of the steamship J. S. Warden, and that in its finding the court below committed no error.

The remaining question is whether the court committed error in admitting certain testimony which must have had an important bearing upon the conclusions reached.

[1] While the libelant, in fixing negligence upon the steamship, had little difficulty in proving by eyewitnesses the proximity of the steamship to the dredge and her high rate of speed in passing, the refusal of her master to slow down and heed warnings, and the effect of her swells upon the dredge in causing her to surge and break her spuds, the libelant at first had considerable difficulty in fixing the precise dates upon which such acts of negligence occurred. The principal witnesses for the libelant as to acts of negligence were a United States inspector of engineering in charge of the work upon which the dredge was employed and the captain of the dredge. The former directed the work, and the latter operated the dredge; the former was responsible to the government, and the latter to the owner of the dredge. It was the duty of the inspector to make daily reports of the work to his chief, and especially to report and give the reasons for any suspension of the work. It was likewise the duty of the captain to make a similar report to the

owner of the dredge, indicating the yardage removed, and any delay in the operation of the work that occurred, and the cause thereof, in making which report he was assisted by the inspector, both being at all times upon the dredge. The reports of the inspector were made by him in his own handwriting and filed at the office of the government in the city of New York. The reports of the captain were prepared by the inspector in his handwriting, upon information supplied by the captain, and by him examined before being mailed and sent daily to the owner. Both witnesses testified readily to the conduct of the steamship; but, unaided, neither could connect his testimony with the dates upon which occurred the acts concerning which he testified.

Upon a rehearing the inspector produced his daily reports. Before testifying as to their contents, he stated that he had no present recollection of the dates upon which occurred the facts concerning which he was ready to testify; that the reports were made by him in the usual and regular course of his employment, and consisted of original entries made upon the dates there indicated; that such entries were made by him in his own handwriting, and were in truth correct, but that by reading the dates his memory as to them was neither refreshed nor his recollection restored.

The entries, however, embraced more than dates. They included a recital of what happened upon the dates, such as: "Starboard spud broken by steamer Warden, replaced at 11:40 a. m." The reports were neither offered nor admitted in evidence, but the witness was allowed to read the entries appearing on them. As they did not refresh his memory, the entries really constituted a record of his past recollection, to the truth of which he swore, and as such they were admitted in evidence.

It was not contended that an entry, "Starboard spud broken by steamer Warden," was admitted to prove the fact that the Warden broke the spud, for upon that fact, deduced from the conduct of the steamer and the behavior of the dredge, the witness was able to testify from his present recollection. But he was unable to testify from his recollection as to the date of the occurrence. The date in the reports, which he swore was correct, connected the time of the occurrence with the occurrence itself. But he could not testify to the date, either from recollection or from a memory refreshed, though at one time the date was within his mind. The entry of the date, therefore, must have been admitted in evidence, though not so stated by the court, as a record of a past recollection, to supplement the witness' present recollection of the facts, and thus together complete a communication of the witness' whole original impression of the facts concerning which he was called upon to testify.

The captain's situation was somewhat different. Like the inspector, the captain could testify to facts unaided, and could not testify to dates; but, unlike the inspector, he could testify to dates from his present recollection when refreshed by reading the cards containing his daily reports to his employer, which the inspector had made upon his information and under his supervision and inspection.

We think the testimony of the inspector was properly admitted under the rule recognized by this court as applied to the facts of the case

of Reyburn v. Queen City Savings Bank & Trust Co., 171 Fed. 609, 96 C. C. A. 373, affirming the decision of the Circuit Court, reported in 163 Fed. 597. In that case the books of a bank, regularly and fairly kept by one of its employés in the regular course of his employment, disclosing original entries of debits and credits, were held admissible in evidence to establish the time of a transaction therein recorded, under the general rule admitting in evidence books of original entries supported by the oath of the party, to prove the transaction therein contained. This rule was early recognized as a rule of convenience. While it existed at common law and is old in this country within the restricted uses for which it was first employed, the rule has gradually been expanded to meet the exigencies and complexities of modern business, until now the rule is recognized as a rule of necessity, without which the administration of justice in many matters would be difficult or impossible.

Entries such as made by a bank clerk, and as in this instance by the inspector of engineering, of the great number of transactions which in the regular course of their employment they were required to make in the books of their employers, the subject-matter of which under human limitations it would be impossible for them to remember, even with the aid of the recorded entries, constitute frequently the very best evidence of a fact that exists. The reasons for the rule and its development appear in the cases. Reyburn v. Queen City Savings Bank & Trust Co., 171 Fed. 609, 96 C. C. A. 373; West Branch Lumbermen's Exchange v. Insurance Co., 183 Pa. 366, 38 Atl. 1081; Remington Machine Co. v. Wilmington Candy Co., 6 Pennewill (Del.) 288, 66 Atl. 465; Owens v. State, 67 Md. 307, 10 Atl. 210, 302; Insurance Co. v. Weide, 14 Wall. 379, 20 L. Ed. 894; Acklen's Executors v. Hickman, 63 Ala. 498, 35 Am. Rep. 54; Bank v. Zorn, 14 S. C. 444, 37 Am. Rep. 733; Davis v. Field, 56 Vt. 426; State v. Brady, 100 Iowa, 191, 69 N. W. 290, 36 L. R. A. 693, 62 Am. St. Rep. 560; Cunningham v. Ry. Co., 63 Hun, 439, 18 N. Y. Supp. 600; Shove v. Wiley, 18 Pick. (Mass.) 558; Manheimer v. Stern (Com. Pl.) 18 N. Y. Supp. 366; Haven v. Wendell, 11 N. H. 112; Howard v. McDonough, 77 N. Y. 592; Starkie on Evidence, 176; 1 Greenleaf on Evidence, § 439a; 1 Wigmore on Evidence, §§ 478, 725, 734, 737, 738.

We are of opinion that the court committed no error in permitting the inspector to read into evidence, for the purpose indicated, the entries made by him under the circumstances narrated.

[2] It is argued that the testimony of the captain of the dredge is inadmissible upon the ground that he gave his testimony with a memory refreshed from memoranda not made by himself. The fact that the memoranda from which the captain refreshed his memory as to dates were the original memoranda made under his direction, upon information supplied by him, and were thereafter inspected and examined by him and found to be correct, disposes of the contention and brings the evidence within the rule that a witness may be permitted to refresh his memory by the use of a written memorandum, although it was not made by himself, if he saw it while the facts therein stated were fresh in his recollection, and if he knew that the memorandum as then made was correct. Pacific Coast S. S. Co. v. Bancroft-Whitney Co., 94 Fed. 180, 191, 36 C. C. A. 135; 1 Greenleaf, Ev. (15 Ed.) §§ 436, 437; Commonwealth v. Ford, 130 Mass. 64, 66, 39 Am. Rep.

426; Huff v. Bennett, 6 N. Y. 337, 339; Jones, Ev. § 80; Milling Co. v. Walsh, 108 Mo. 277, 284, 18 S. W. 904, 32 Am. St. Rep. 600; Clark v. Bank, 164 N. Y. 498, 58 N. E. 659; Green v. Caulk, 16 Md. 573; Paige v. Carter, 64 Cal. 489, 2 Pac. 260; McGowan v. McDonald, 111 Cal. 57, 43 Pac. 418, 52 Am. St. Rep. 149; Union Central Life Ins. Co. v. Smith, 119 Mich. 171, 77 N. W. 706; Owens v. State, 67 Md. 307, 10 Atl. 210, 302; Pillsbury v. Locke, 33 N. H. 96, 66 Am. Dec. 711.

The decree is affirmed, with costs.