### SINGER v. UNITED STATES.
#### No. 4720.

Circuit Court of Appeals, Third Circuit.

April 2, 1932.

Winne & Banta and Walter G. Winne, all of Hackensack, N. J., for appellant.

Phillip Forman, U. S. Atty., of Trenton, N. J., and John Grimshaw, Jr., Asst. U. S. Atty., of Paterson, N. J.

Before WOOLLEY and DAVIS, Circuit Judges, and JOHNSON, District Judge.

PER CURIAM.

This is an appeal from a judgment of the District Court entered upon the verdict of a jury convicting the appellant of attempting to defeat and evade a tax upon his income for the year 1926 in violation of section 1114 (b) of the Revenue Act of 1926 (26 USCA § 1266).

The defendant was indicted and charged with receiving a net income of $400,338.90 on which he should have paid an income tax of $92,018.49, but instead he filed a return showing no net income.

His alleged income aggregating $409,788.-90 was made up as follows:

| | | |
|---|---:|---:|
| Commissions | $ 1,200.00 | |
| Interest | 300.00 | |
| Profit from sale of real estate | 15,250.00 | |
| Income from partnership | 163,570.26 | |
| Other income | 240,635.19 | $420,955.45 |
| Business Loss—Restaurant | 9,926.55 | |
| Loss on rent item | 1,240.00 | 11,166.55 |
| Total income | | $409,788.90 |

From this sum was deducted $9,450 allowance for interest, taxes, contributions, and personal exemptions, which left a net balance of $400,338.90.

Defendant tried to ascertain what the above items meant. His attorney wrote to

the United States Attorney on September 15, 1930, for a bill of particulars as follows:

"Dear Sir: The defendant demands a statement of the particulars of the items described as gross income $409,788.90 in the indictment herein, and particularly demands a detailed statement of the items constituting 'Income from partnership $163,570.26', and 'other income $240,635.19.'"

Twelve days thereafter he received the following reply:

"Dear Sir: Replying to your demand for particulars I would say that the gross income is set forth in the indictment in, I think, sufficient detail. The partnership referred to is the Chelsea Beverage Company. The other income is the unidentifiable income obtained by an examination of his bank deposit, together with such other records as the books disclose.

"It would seem to me that for the present time this is all the Government is compelled to give."

On September 30, 1930, defendant's attorney gave the following notice of a motion for a bill of particulars:

"Dear Sir: The defendant hereby serves notice that the particulars heretofore demanded on September 15, 1930, have not been supplied by the Government and that the attempted reply to said demand for bill of particulars by letter of September 27, 1930, is deemed insufficient in law.

"Defendant therefore serves notice of motion before the United States District Court for the District of New Jersey of this demand for further particulars according to the formal demand heretofore made on September 15, 1930."

 At the argument of the motion, counsel for defendant insisted that he was in absolute need of a bill of particulars in order to prepare his defense. He desired particularly to know what was meant by "Income from partnership $163,570.26" and "other income $240,635.19." If these items were true net income, as charged, constituting a part of the $400,338.90, he did not understand them, and could not properly prepare his defense. If, on the other hand, they were not net income, but aggregate gross partnership receipts and bank deposits, and the government knew this and refused to disclose it, the pleading was bad, and the false figures could have been stricken from the indictment. A bill of particulars would have enabled the defendant on the one hand to prepare his defense, or, on the other, to attack the indictment. The re-

fusal to furnish a bill of particulars left him in a dilemma, and was prejudicial.

The closing statements of one of the real estate title companies with which the defendant dealt and the bank records were put in evidence over objection, and a government witness was asked if from these records he could state what the defendant's income for 1926 was. He said he could, and, over objection, was permitted to state that it was over $400,000. And yet, through the information brought out during cross-examination, and the facts which the court required the government to give to the defendant, which several times necessitated the cessation of the trial for hours, nearly $300,000 was eliminated from the $400,338.90 which the government charged, and the witness said, was the defendant's net income, on which he should have paid the tax of $92,018.49. These charges, this testimony, and the great number of irrelevant figures could not but prove harmful to the defendant and prejudice the jury against him. All this could and would have been avoided by a proper bill of particulars which would have shown the falsity of the allegations and enabled the defendant to eliminate untrue and prejudicial charges from the indictment and irrelevant and harmful evidence from the jury. The entire item of alleged "other income" of $240,635.69, except about $10,000 was eliminated in the course of the trial from the indictment as income on which a tax had to be paid.

The net income of $400,338.90 was made up in part by "Income from partnership $163,570.26." This, it was discovered on the trial, was one-half of the gross receipts of the Chelsea Beverage Company for 1926. In his reply to the request for a bill of particulars, the government said that "the partnership referred to is the Chelsea Beverage Company." But whether it was the gross receipts, one-half of them, or net income for the whole or part of the company computed on some unknown basis or method, the defendant did not know.

After counsel was informed that it related to the Chelsea Beverage Company, he went to Trenton, and in conference with the court and Assistant United States Attorney asked permission to inspect the books of the company which had been taken by the government. This request was apparently granted, but later on counsel was notified that "upon mature deliberation I do not see why the Government should permit Mr. Singer or his attorney to inspect the books." The gov-

ernment said that "he could tell from his own records whether or not this income had been received." The difficulty was that he did not know just what this item included, and his own records, the books, were in the possession of the government and he could not remember, after the lapse of five years, so many transactions and tell anything about his true income. There was no reason to charge his memory with these facts until the indictment was found, and any offer of the books before that time was of no help to him in his preparation for trial.

It is evident that, since the defendant was refused a bill of particulars, showing what constituted these large items of alleged net income, and was refused permission to inspect the books of the Chelsea Beverage Company, he could not properly prepare his defense, and was not in a position to keep from the jury the great mass of prejudicial evidence which was admitted in this case. While much of this evidence was stricken out, yet the harmful effects could not be stricken from the jury's minds.

When it appears that the indictment does not inform the defendant with sufficient particularity of the charges against which he will have to defend at the trial, he is entitled to a bill of particulars, if seasonal application is made therefor. The defendant may demand this as a matter of right, even though the indictment sets forth the facts constituting the essential elements of the offense with such certainty that it cannot be pronounced bad on motion to quash or demurrer, where the charge is couched in such language that the defendant is liable to be surprised and unprepared. Tilton v. Beecher, 59 N. Y. 176, 184, 17 Am. Rep. 337; Watkins v. Cope, 84 N. J. Law 143, 147, 86 A. 545; State v. Bove, 98 N. J. Law, 350, 353, 116 A. 766; United States v. Eastman (D. C.) 252 F. 232; Wilson et al. v. United States, 275 F. 307, 310 (C. C. A. 2); Bodine v. First National Bank of Merchantville (D. C.) 281 F. 571; Filiatreau v. United States, 14 F.(2d) 659 (C. C. A. 6); Lett v. United States, 15 F.(2d) 686 (C. C. A. 8); O'Neill v. United States, 19 F.(2d) 322, 324 (C. C. A. 8).

The indictment in this case did not inform the defendant with such particularity of what he had to meet at the trial as to enable him to prepare his defense without surprise and embarrassment. A reading of the record shows this conclusion to be inescapable. The frequent interruptions of the trial to enable the government to give the defendant the information which would have been contained in a bill of particulars show that he was surprised, could not properly prepare his defense, and that his motion for a bill of particulars should have been allowed. For example, the defendant did not know what was meant by the item, "other income $240,635.-19." It could have meant other income from any source whatever. When the government replied to the defendant's letter stating that it was "unidentifiable income obtained by an examination of his bank deposit, together with such other records as the books disclose," it did not give him any real information as to what this income was—what deposit, what records, and what books were not disclosed. The government could not state what constituted the "other income" without showing the falsity and untenable character of the charge. This item was not set forth with such definiteness and particularity as to enable the defendant to plead it in bar to another prosecution for the same crime.

 The court admitted over objection certain alleged settlement sheets of the Chelsea Title & Guarantee Company and of the South Jersey Title & Finance Company. These sheets purported to show the date of purchase, purchase price, selling price, and date of sale of certain real estate, together with the names of the parties. Certain sheets known as Government Exhibits 90 and 91 were taken from the files of the South Jersey Title & Finance Company, and were written in lead pencil, on ordinary yellow pad paper, but when and by whom was not shown, though apparently by two persons. A witness upon whom the government mainly relied was permitted to testify, over objection, from these sheets alone, that certain profits were made in the transactions to which they referred, but he also testified that he could not tell whether or not these were final settlement sheets because they were written in lead pencil and all the settlement sheets which he had examined were either typed or written with ink. It would thus appear that these sheets were nothing more than memoranda containing certain data relating to the transactions in question which might or might not have been changed before being incorporated into the final settlement sheets, if they ever were.

Original entries of transactions made in the regular course of business when the entrant is dead or otherwise unavailable upon being identified are admissible. Such entries are also admissible when the entrant is present, identifies them and testifies that they are true, though they do not refresh his mem-

ory and he has no independent recollection of the truth of the transactions which they record. This rule grew up as a matter of convenience, but, under the exigencies and complexities of modern business, it has become a rule of necessity without which the administration of justice in many matters would be difficult or impossible. The "J. S. Warden" (C. C. A.) 219 F. 517, 521, and the many cases there cited. It is clear that these memoranda do not come within the above rule, and it was error to admit them in evidence. Government Exhibit 94 likewise was inadmissible because it was not shown that the entries were made in the regular course of business, nor who the entrant was, nor whether or not he was available for testimony.

█ A government witness was permitted to testify, over objection, from the records of gross bank deposits of the defendant, that his net income was $403,838.90, which, however, does not include his personal exemption of $3,500. On the contrary, the court refused to admit in evidence certain accommodation checks, which were exchanged by the defendant with others, deposited in his account. These kited checks increased the amount of defendant's bank deposits, but did not represent income. After the government had shown the amount of these deposits for the year 1926, and charged that they were part of defendant's net income, he should have been allowed to show, even on the government's theory of the case, that this alleged net income was reduced by the amount of these checks.

Innocent men may be indicted and convicted, and guilty men may be acquitted, but both good and bad men are alike entitled to the application of the rules of evidence which courts throughout the ages have found to be best for the fair and impartial administration of the law. When these rules, under the stress and strain of a trial, have been violated, it does not cure the injury to reply with the stereotyped argument that it does not appear it in any wise influenced the minds of the jury. The reply the law makes to such suggestion is "that, after injecting it into the case to influence the jury, the prosecutor ought not to be heard to say, after he has secured a conviction, it was harmless." Miller v. Territory of Oklahoma (C. C. A.) 149 F. 330, 339, 9 Ann. Cas. 389; Coulston v. United States (C. C. A.) 51 F.(2d) 178, 182.

The judgment is reversed and a new trial awarded.