[Crim. No. 897. First Appellate District, Division Two.—July 30, 1920.]

THE PEOPLE, Respondent, v. JOHN H. SMITH, Appellant.

[1] CRIMINAL, LAW—HOMICIDE—SELF-DEFENSE — BAD REPUTATION OF DECEASED—EVIDENCE.—In cases of homicide where the plea of self-defense is interposed and the evidence before the jury leaves it in doubt whether the deceased was the aggressor, or where the circumstances attending the homicide render it doubtful or equivocal whether the defendant was justified in believing himself in imminent danger at the hands of the deceased, evidence as to the bad reputation of the deceased is admissible.

[2] ID. — OPPORTUNITY TO PRESENT DEFENSE — RECORD ON APPEAL.— On this appeal from the judgment of conviction of manslaughter, in a prosecution for murder in which the killing was admitted but the defendant attempted to justify it on the ground of self-defense, the record did not sustain the appellant's contention that he was not given an opportunity to present in his defense evidence as to the bad reputation of the deceased.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Michael J. Roche, Judge. Affirmed.

The facts are stated in the opinion of the court.

Kenneth M. Green and Harold C. Faulkner for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

NOURSE, J.—The defendant was prosecuted for murder, convicted of manslaughter, and sentenced to imprisonment in the state prison. Upon the trial the killing was admitted, but defendant attempted to justify it on the ground of self-defense.

---

1. Evidence of character and reputation of deceased on trial for homicide, notes, 124 Am. St. Rep. 1018; 4 Ann. Cas. 338; 8 Ann. Cas. 357; 11 Ann. Cas. 229; 2 L. R. A. (N. S.) 102; 3 L. R. A. (N. S.) 352.

The only ground for reversal presented by defendant on appeal is that the court committed prejudicial error in excluding certain testimony relative to the bad reputation of decedent, his reputation of carrying a gun, and defendant's knowledge thereof. This evidence was offered by defendant for the purpose of showing the state of mind of defendant at the time he shot decedent and that he was justified in believing that he was in imminent danger from a criminal assault by decedent.

Defendant shot and killed James Branum following a brief altercation over the amount of money won by decedent in a card game which the two were playing. The evidence is that decedent met defendant and one Brooks, a mutual acquaintance, in a saloon and invited them to his house to play cards. Defendant had known decedent about three months. At the time of the shooting defendant and decedent were playing and Brooks was watching the game. Defendant testified that the first difference occurred between himself and decedent when he discovered the latter cheating in dealing the cards, but no quarrel ensued; that they later got into a dispute over the amount of money which decedent had won; that they became excited and both together rose to their feet; that decedent started to reach with his left hand for the money in dispute (which was lying on the table in front of defendant); that with that hand he grabbed defendant, at the same time reaching for his right hip pocket with his right hand; that defendant thought decedent was going to shoot him or cut him with something, because he had heard he had that reputation, and he pulled a gun which he had in his right hip pocket and shot Branum twice. Decedent did not, in fact, have any weapon in his possession. Brooks, who was watching the game, was the only eye-witness to the affair, other than defendant. He testified that the shooting occurred about three-quarters of an hour after they arrived at decedent's house; that before the quarrel arose as to the amount of the bet the three were perfectly friendly. His version of the affair was as follows: "Branum bet $1.50 on the card game and he won, and Smith said: 'You only bet fifty cents.' Smith said: 'I will pay you fifty cents.' Branum said: 'You pay me a dollar or you owe me nothing.' Smith had two or three dollars in front of him and he said: 'If I owe you a dollar

take it,' and Branum reached over to get his dollar; and when Branum reached to get his dollar Smith got up and said: 'Give me my dollar, give me my dollar.' Then Branum said: 'Didn't I win?' And he said: 'Give me my dollar,' and then he shot him.'' Brooks further testified that both decedent's hands were on the table when he reached for the dollar; that decedent made no threat, neither did he see decedent make any motion or reach into any pocket before the shot was fired, although he was sitting with the two men at the table, facing them and watching the game; that when the shot was fired decedent was reaching toward Smith as if to get his hand on defendant's gun.

[1] Appellant's whole case is based upon the proposition that "In cases of homicide where the plea of self-defense is interposed and the evidence before the jury leaves it in doubt whether the deceased was the aggressor, or where the circumstances attending the homicide render it doubtful or equivocal whether the defendant was justified in believing himself in imminent danger at the hands of deceased," an exception is made to the general rule and evidence as to the bad reputation of the deceased is admissible. (*People* v. *Lamar,* 148 Cal. 564, [83 Pac. 993].) [2] His complaint is that he was not given an opportunity to present this evidence in his defense. The record does not support this argument made in his behalf.

In his effort to justify the homicide appellant testified that he thought decedent "was going to shoot me or cut me with something—he had that reputation—the men had around him.'' After this testimony was offered, appellant's counsel stated, "He now testifies that he heard that Branum was a dangerous man. That goes to the crux of the whole matter and if I can substantiate that by creditable witnesses which I will try to do but if I can't prove it his statement will go out as self-serving.'' Then the same witness was asked: "Why did you think when he made a motion of that kind that he was liable to draw a deadly weapon?'' To which he gave answer: "Well, by hearing that man was a bad man, that he would do anything but the right thing. . . .''

The only "corroboration'' offered by appellant was the testimony of Lieutenant Goff, of the police department, to the effect that he believed the decedent was "a fighter and

scrapper," because he fought the officer in July, 1918, when he arrested him for either keeping or visiting a house of ill fame. No other corroboration of the testimony of appellant relative to the general reputation of decedent was attempted. This was not because of any objection on the part of the district attorney, but apparently because such testimony was not available. This is indicated by the remarks of appellant's counsel when offering in evidence the record of the conviction of decedent in 1912 for an entirely unrelated offense: "Since Mr. Berry [deputy district attorney] has let down the bar I may as well offer the record of James Branum."

The bar having been let down, appellant cannot now be heard to complain that he was not given a full and fair opportunity of presenting his defense. An examination of the entire record shows that he was fairly tried and convicted and that no error complained of resulted in a miscarriage of justice.

The judgment is affirmed.

Langdon, P. J., and Brittain, J., concurred.