### JEWETT et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. November 15, 1926.)

No. 4899.

1. **Courts** ⧉337—State laws do not regulate practice of federal courts in criminal cases.

The practice in federal courts in criminal cases is not subject to regulation by state laws.

2. **Witnesses** ⧉255(5)—Permitting witnesses in a criminal case to refer to notes made from prior memoranda held error.

Permitting witnesses, who had made memoranda of transactions when they occurred, to use notes recently made from such memoranda when on the stand, by referring to the same for facts which they could not otherwise remember, *held* error.

3. **Witnesses** ⧉255(5)—Witness may not use a copy of a record when testifying, but must, if possible, produce the original.

A witness may not use a copy of a record when testifying, but must, if possible, produce the original, of which opposing counsel may demand an inspection.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Criminal prosecution by the United States against James Jewett and others. Judgment of conviction, and defendants bring error. Reversed.

Crandell & Crandell and William P. Guthrie, both of Seattle, Wash., for plaintiffs in error.

Thos. P. Revelle, U. S. Atty., and C. T. McKinney, Asst. U. S. Atty., both of Seattle, Wash.

Before RUDKIN, Circuit Judge, and DIETRICH and KERRIGAN, District Judges.

DIETRICH, District Judge. The plaintiffs in error, who will hereafter be referred to as the defendants, were convicted upon an indictment charging them with conspiracy to violate various provisions of the National Prohibition Act (Comp. St. § 10138¼ et seq.).

The first assignments raise the question of the sufficiency of the charge. The indictment sets forth clearly that on or about the 1st day of August, 1923, at the city of Seattle, the defendants willfully and unlawfully conspired together to violate the provisions of the National Prohibition Act; it being the plan, purpose, and object of the conspiracy, and the object of the defendants in so conspiring, unlawfully to possess and sell intoxicating liquors, including whisky, within the district and division where the indictment was brought, and also unlawfully to conduct and maintain a common nuisance at certain premises in Seattle, by keeping for sale and selling at such place whisky and other intoxicating liquors. It further charges that the conspiracy was and is a continuing one, covering a period from the 1st day of August, 1923, to the time of the presentment of the indictment. Thereupon it is averred that after the formation of the conspiracy, and in pursuance thereof, and to effect its object, one or more of the conspirators committed divers overt acts, 22 in number, each of which is described with considerable particularity.

The charge so clearly meets all the essential requirements of an indictment that we pass the assignments without further comment; they are devoid of merit.

There was no error in refusing to direct a verdict for the defendants. There was abundant evidence to justify the conclusion reached by the jury.

[1] It is also contended that in its instructions the court erred in commenting upon and arguing the facts. Conceding that the instructions are within the rules of established practice in the federal courts (Horning v. District of Columbia, 254 U. S. 135, 41 S. Ct. 53, 65 L. Ed. 185), counsel urges that they are in contravention of a provision of the Constitution of the state of Washington prohibiting judges from charging jurors with respect to matters of fact, or commenting thereon. But the practice in federal courts in criminal cases is not subject to regulation by state laws.

[2] The remaining assignments challenge rulings touching the use by government witnesses of written memoranda, both while they were giving their direct testimony and

upon cross-examination. These witnesses had from time to time, after having had a transaction with one or more of the defendants, made memoranda thereof in notebooks or other forms of record. Immediately prior to being called as witnesses they resorted to these records, and, as they testified, made notes therefrom, and brought such notes to the witness stand. Learning that the notes were so made, counsel for the defendants repeatedly objected to their use, and requested that the originals be brought into court. The objections were overruled, and the requests denied.

Clearly, we think, these rulings were erroneous. It is one thing to awaken a slumbering recollection of an event, but quite another to use a memorandum of a recollection, fresh when it was correctly recorded, but presently beyond the power of the witness so to restore that it will exist apart from the record. In the former case it is quite immaterial by what means the memory is quickened; it may be a song, or a face, or a newspaper item, or a writing of some character. It is sufficient that by some mental operation, however mysterious, the memory is stimulated to recall the event, for when so set in motion it functions quite independently of the actuating cause.

But that is not the case here presented. The witnesses were unable to testify without having in their hands the copied data to which they could refer for facts which they could not remember; they had no independent recollection thereof. True, they had a general recollection of events to which the data pertained, but they had to resort to those notes for dates and names and persons, and the quantities and kinds of liquor purchased. Under pressure, it is true, and in reply to leading questions, in some instances they answered that they had an independent recollection; but obviously they answered under a measure of misapprehension, for, if they needed to refer to their records only to arouse a present recollection, the reading of the original records and the making of notes therefrom would have fully served the purpose. It would not have been necessary for them to hold in their hands the copied notes and refer to them while they were giving testimony.

[3] Such being the case, we think the rule is well founded in principle, and fortified by the great weight of precedent, that a witness may not use a copy of the record, but must, if possible, produce the original. In Wigmore on Evidence (2d Ed.) vol. 2, § 349, the learned author says: "In short, the original record itself must be used in testifying, * * * if it is procurable. This rule * * * is almost universally recognized."

The government cites as authority for the course pursued Goodfriend v. United States (C. C. A.) 294 F. 148. But the copies there used were made soon after the event and while the facts were still fresh in memory. Clearly, if, as was there the case, brief memoranda, made at the very time of the occurrence, are amplified and copied soon after the occurrence, and while the facts are still fresh in the memory of the witness, the use of such copy falls within the principle underlying the rule.

The practice here followed would be attended with great danger. The general rule is that, where a record is used for the purpose for which the notes here were employed, opposing counsel may demand inspection of it, and, if it exhibits erasures, alterations, or other irregularities, the jury's attention may be called to them. It would be possible for a corrupt witness to withhold the original memorandum and use notes purporting to be copies, fixed up in such way as to make a much more favorable showing than that made by the original; the opposing party would be powerless to protect himself against such false showing.

We do not regard as having any force the suggestion that, if in such cases counsel for the defendant may have inspection of the original records, the privilege may be abused, and information may thus be improperly obtained bearing on other cases not on trial. The trial court is abundantly able to prevent such abuse.

The judgments must be reversed, with instructions to grant new trials.