## MONUMENT POTTERY CO. v. IMPERIAL COAL CORPORATION.

Circuit Court of Appeals, Third Circuit.
September 24, 1927.

No. 3583.

1. Damages ⬦118—Contract provision, fixing legal measure of damages, will be enforced.

Provision of contract fixing measure of damages for breach, consonant with the legal rule, will be enforced in action for breach.

2. Witnesses ⬦255(5)—Permitting president to use memorandum copied from corporation's books to refresh recollection held not error.

Permitting president of coal company, who had active charge of its daily sales, as witness in action by company, in testifying as to market price on different dates, to use memorandum copied from company's books to refresh his recollection, *held* not error though he did not make all original entries.

3. Appeal and error ⬦1170(1)—Technical errors, defects, or exceptions not affecting parties' substantial rights are not ground for reversal (28 USCA § 391).

Technical errors, defects, or exceptions, which do not affect substantial rights of parties, are not grounds for reversal, in view of Act Feb. 26, 1919 (28 USCA § 391 [Comp. St. § 1246]).

4. Appeal and error ⬦231(1)—Questions for review on writ of error must be raised in trial court by specific, precise, direct, and unambiguous objections.

To lay foundations for review by writ of error, the questions of law proposed to be reviewed must be raised by specific, precise, direct, and unambiguous objections in trial court.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Action at law by the Imperial Coal Corporation against the Monument Pottery Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Edward L. Katzenbach, of Trenton, N. J., for plaintiff in error.

H. S. Endsley, of Johnstown, Pa., and Hervey Studdiford Moore, of Trenton, N. J., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. The Imperial Coal Company, plaintiff, and the Monument Pottery Company, defendant, entered into a contract on November 3, 1920, whereby plain-

tiff agreed to sell and defendant to buy 6,000 tons of "Shade Creek coal," which is bituminous coal produced at the plaintiff's Shade Creek mine in Pennsylvania, for $5.75 per ton f. o. b. mine. The coal was to be shipped in equal monthly quantities, beginning January 1, 1921, and ending December 31, 1921. The defendant agreed to furnish plaintiff with consignments of the coal. Soon after the contract was signed, the price of coal fell, and during the year 1921 ranged from $3.44 to $2.71 per ton.

The defendant did not furnish consignments for any of the coal specified in the contract and refused to accept any of the coal. The plaintiff thereupon sold the coal in the open market from month to month during the year 1921, at market prices obtainable for the same, and the difference between the market prices and contract prices, for which suit was brought, it is alleged, amounts to $16,045. The defendant filed an answer and a counterclaim against the plaintiff for failure to deliver coal in accordance with another agreement made in 1919. The case was tried to the court and jury, which returned a verdict for the plaintiff and found against the defendant on the counterclaim. The defendant has brought the case here on writ of error.

It says the court erred in its charge in respect to damages, in the admission of evidence, and in its instruction to the jury that there was evidence that the coal was sold under a trade-name.

The court charged the jury that, "where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept." Was this error?

[1] The parties stipulated in the contract the measure of damages in case of default by either party as follows: "The measure of damages in the case of default by either party shall be limited to the difference between contract price and the market price at the time and place of delivery." They could not at the time the contract was made say what the damages for the nonperformance of the contract by either party would actually be, and so they could liquidate and state their damages for nonperformance of the covenants of the contract. In the case of Sun Printing & Publishing Association v. Moore, 183 U. S.

642, 22 S. Ct. 240, 46 L. Ed. 366, the Supreme Court said:

"This court has consistently maintained the principle that the intention of the parties is to be arrived at by a proper construction of the agreement made between them, and that whether a particular stipulation to pay a sum of money is to be treated as a penalty, or as an agreed ascertainment of damages, is to be determined by the contract, fairly construed; it being the duty of the court always, where the damages are uncertain and have been liquidated by an agreement, to enforce the contract." Wood v. Ocean City, 85 N. J. Eq. 328, 96 A. 489; 17 Corpus Juris, 931.

The stipulation correctly embodied the law of damages for the nonperformance of contractual covenants. Mindlin et al. v. O'Boyle et al., 278 Pa. 212, 122 A. 294; Frank Pure Food Co. v. Dodson et al., 281 Pa. 126, 126 A. 243; Roomberg et al. v. Borden et al. (C. C. A.) 292 F. 321. Section 64, subd. 3, of the Uniform Sales Act in operation in both New Jersey and Pennsylvania, where the contract was made and was to be performed, provides:

"Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damages of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

The defendant contends that the words "shall be limited" in the stipulation, providing that the damages "shall be limited to the difference between contract price and the market price," "evidence the intention of the contracting parties that, if a lesser measure of damages than that of the difference between the market price and the contract is available to the parties in the event of a breach, the lesser measure of damages shall be used." We are not convinced that this is the correct construction to be placed upon the words. They mean in our opinion that the measure of damages shall be the difference between the contract price and market price and nothing else. It shall be neither higher nor lower, but shall be limited to just that. If it had meant otherwise, it would have said so. We think that the trial judge did not err in his charge as to the measure of damages.

[2] The defendant says the judge erred in admitting hearsay evidence to sustain plaintiff's contention of damages. This allegation

refers to the testimony of Charles A. Owen, president of the plaintiff company, with reference to market prices and the tonnage of coal produced by the plaintiff. He used a memorandum which he took from the books of original entry of the company. But Mr. Owen was the active head of the company and was in charge of the sales offices of the company. He testified that, by intimate contact with buying and selling bituminous coal daily during 1920 and 1921, he acquired knowledge of the market prices of coal for that period. He himself did not make all the original entries, but he did make some of them, and others he dictated to stenographers in the office. However, he passed upon and signed every contract of sale except "spot orders" for the time in question. Under these facts it was permissible for him to use the memorandum to refresh his recollection. If the records or a copy of them or memorandum refreshed his recollection so that he knew the facts which they represented were true, he need not have made the record himself. Green v. Caulk, 16 Md. 573; McGowan v. McDonald, 111 Cal. 57, 43 P. 418, 52 Am. St. Rep. 149; Curtis v. Bradley, 65 Conn. 99, 31 A. 591, 28 L. R. A. 143, 48 Am. St. Rep. 177; Greenleaf on Evidence (16th Ed.) vol. 1, § 439b; Wigmore on Evidence, vol. 2, §§ 1530, 1555. The witness said at one place that he had knowledge of those prices by buying and selling daily, by making some of the records himself, by signing all but "spot orders," and by passing upon all contracts. Again, he said that he did not remember the prices, but it is evident he meant "aside from the records" in his office which refreshed his recollection. This is true also as to defendant's contention as to Mr. Owen's testimony as to the tonnage produced by the plaintiff during the period the contract was to run. The circumstances before us are very different from those in the case of Pabst Brewing Co. v. E. Clemens Horst Co. (C. C. A.) 229 F. 913. There the witness could not have known anything about the figures in the books showing office expenses, insurance charges, warehouse charges, and freight charges in New York and Chicago. The testimony in that case was clearly inadmissible. The same is true as to the testimony permitted in the case of Davis v. Supreme Council Royal Arcanum, 195 Mass. 402, 81 N. E. 294, 10 L. R. A. (N. S.) 722, 11 Ann. Cas. 777, and other cases where the witnesses knew absolutely nothing about the facts except what they had gathered from the records themselves.

The court admitted in evidence the average market price for each month. Defendant says this was erroneous because, "if a breach occurred in any month of the year 1921, and if the basis of damages urged by the plaintiff is correct, then the market price on the last day of each month of the year 1921 is the market price and not the average market price for each month."

[3] The evidence shows that there was a general decline in the price of coal during the entire year of 1921 from January to December, and so the price was generally lower on the last day of each month than on the other days of the month or the average price of the month, and, if the price of the last day had been taken, plaintiff's damage would have been greater. Assuming, therefore, that the basis of damage was erroneous, it was beneficial rather than harmful to the defendant, and the judgment should not be disturbed on that account. Technical errors, defects, or exceptions, which do not affect substantial rights of the parties, are not grounds for reversal. Act of February 26, 1919 (40 Stat. 1181 [28 USCA § 391; Comp. St. § 1246]); De Jianne v. United States (C. C. A.) 282 F. 737; Thompson v. United States (C. C. A.) 283 F. 895.

Defendant says that the court erred in instructing the jury that there was evidence that the coal covered by the contract was sold under a trade-name.

Both contracts, that of November 3, 1920, for 6,000 tons, on which plaintiff's complaint is based and the contract of October 13, 1919, for 9,600 tons, on which the counterclaim is based, are for "Shade Creek" coal. Mr. Owen testified for the plaintiff that "the term 'Shade Creek' under which the coal was sold was purely a trade-name." This was denied by Mr. Gould, the defendant's expert, who said that Shade Creek coal was not used in the coal business as a trade-name, but as a designation of a mine from which coal was taken. Whether or not the words are a trade-name or merely designate the place from which it came was, under the instruction of the court, a question for the determination of the jury. The learned trial judge charged the jury that there was testimony that the term "Shade Creek coal" was a trade-name; that there was testimony that it was not a trade-name; that it should decide whether or not it was a trade-name, and, if it was, there was no implied warranty as to the fitness of the coal for any particular purpose, but if it was not a trade-name, there was an implied warranty. Section 15 (4) of the Uniform

Sales Act. The charge on that subject was apparently satisfactory to defendant when delivered, for there was no request to charge differently, and there was no exception to the charge on that subject as delivered.

[4] It is elementary that, in order to lay a foundation for review by writ of error, the questions of law proposed to be reviewed must be raised by "specific, precise, direct, and unambiguous objections, so taken as clearly to afford the trial judge an opportunity for revising his rulings and that a bill of exceptions not fulfilling this test will not support an assignment of error. De Jianne v. United States, supra; Frey & Son v. Cudahy Packing Co., 256 U. S. 208, 41 S. Ct. 451, 65 L. Ed. 892. The assignment on this subject is therefore unavailing.

The judgment is affirmed.