## COHEN v. UNITED STATES.

Circuit Court of Appeals, Third Circuit.
December 5, 1929.

No. 4183.

William A. Gray, of Philadelphia, Pa., for appellant.

Calvin S. Boyer, Acting U. S. Atty., and Elmer C. Pfeiffer, Asst. U. S. Atty., both of Philadelphia, Pa.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. Cohen was a bankrupt. The indictment under which he was tried and convicted contained six counts. Three charged him with perjury in that he testified falsely in a proceeding before a referee; the fourth with making a false oath to his schedules; the fifth with concealing books; and the sixth with having withheld books from the receiver. On this appeal Cohen raises three questions. The first two do not grow out of the court's rulings or instructions on controverted issues of fact, for when on the stand Cohen's testimony was carefully limited by the direct examination to the single issue of his residence at the time of the execution of a search warrant, a matter which relates to the third question. Therefore these two questions are restricted to the sufficiency of the government's proof of essentials of the crime of perjury.

He first charges that the government failed to prove that he had actually been sworn in the proceeding before the referee. On this issue the counts alleged that on a certain day Cohen appeared before a named referee in bankruptcy, "a person qualified to administer oaths," and, "having been duly sworn by" him that "he would truly testify in his examination," testified falsely in the way described. In order to prove the oath, admittedly an essential in proving the crime of perjury in a bankruptcy examination, the government called the stenographer of the deceased referee who produced her transcribed notes of the hearing and testified in response to a question by the court that she recorded the oath as follows: "Samuel Cohen called to the stand; sworn by referee; examined by referee." On cross-examination the witness testified that she did not recall the actual administration of the oath, but she knew the referee administered it, not from her recollection independent of her notes or refreshed by her notes but because all witnesses were sworn in every case, and that she made a record of the oath administered in this instance. She further testified that the transcript, showing that the oath had been administered, was a true and correct transcript of the proceedings as taken from her original notes, that she took the minutes of the meeting, that she recorded everything that was done and did not record anything that was not done, and that the transcript showed accurately what transpired.

▇ This testimony, admitted over the defendant's objection as to the formality of its proof, disclosed a complete and unchallenged record of the administration of the oath, supplemented by the oath of the witness that the record speaks the truth. She testified not from her present recollection, it is true, but rather from her past recollection recorded. This evidence would, without doubt, be admissible in a civil action. The J. S. Warden (C. C. A.) 219 F. 517, 519. Was it admissible in this criminal action to prove a like fact?

The stenographer, though not an official, was employed to take the testimony of witnesses in all bankruptcy proceedings before the referee. Her notes of proceedings and the resultant transcripts constituted the only record of the testimony before the referee and of what the referee did in the performance of his official duties. They were not official documents in a technical sense and therefore did not speak absolute verity but they were enough, when supplemented by the oath of the one who made them, to constitute prima facie proof of the facts there recorded. Mere want of a present and independent recollection of all the attending circumstances can not alone destroy their probative value. They were, of course, open to attack and, when confronted by evidence in rebuttal, there would arise a question for the jury as to the truth of the facts recorded, which question the court in this case submitted to the jury even though the appellant offered no evidence in rebuttal. We realize that on this subject no rule can be laid down which will apply to all cases but are of opinion that in the circumstances of this case the testimony adequately proved the administration of the oath and was properly admitted.

▇ The appellant next says that the government failed to prove that he actually swore to the truth of the statements contained in his bankruptcy schedules. The schedules were admitted in evidence over the appellant's objection that there was no proof the oath there noted was administered to him. There was proof, however, that a special

agent of the Department of Justice asked the attorney for the appellant whether it was his office notary who "notarized the schedules" and both the attorney and the notary answered, "Yes." The appellant was sitting nearby and remained silent. He cannot now be heard to complain that his schedules—official documents, officially attested—do not constitute prima facie evidence of the oath there recorded. Komp v. State, 129 Wis. 20, 108 N. W. 46.

The third and last matter which the appellant assigns as error is, as stated by him:

"That the court below erred in admitting evidence obtained by the government through an unlawful search and seizure."

This is more of an assertion of fact than a statement of a question for, manifestly, if the government obtained evidence in that way the court erred in admitting it. The question is whether the evidence admitted was obtained through an unlawful search and seizure. The facts, briefly stated, were these:

Cohen had trouble with his wife. On the 12th or 13th of August, 1928, he broke up his home in Atlantic City and sent his trunk and some of her furniture to a house in Philadelphia owned by Alice Albus, his sister, and maintained by Adolph Albus, his brother-in-law, as a home for himself and family. Cohen left for Philadelphia the same day and at the trial maintained that the Albus home then became and has ever since remained his home. On August 23 the premises were searched under a warrant and his property, consisting of business papers and books, seized. On proof of his possession of these papers and books, the charge of concealment, and also the charge of perjury, was in part based. On his motion the trial court ruled that the search and seizure were illegal and excluded all evidence obtained by them. The government then called as a witness Charles Klein, Assistant to the Attorney General of the State of Pennsylvania, assigned to the Department of Banking in the capacity of special counsel. It was shown from his testimony that he was instrumental in the prosecution of this case and was in direct communication with the receiver and the District Attorney. He admitted that he was a party to the procurement of the search warrant; that he knew it had issued and that the officers had actually gone to make the search; that, though he did not expect to hear from the searchers, one of them called him by telephone from the Albus residence, which we shall assume was Cohen's residence also, and told of finding his books; that as a result of the telephone call, about an hour later, he went to the house. Ringing the bell, the door was opened by Albus who invited Klein to enter, saying: "Hello, Charlie. Come on in; they're down stairs." After entering, Albus led him to the cellar where the searchers were assembled and the papers and books were in view. When about to testify as to what he saw, counsel for the appellant objected, but the court, observing that "It does not appear he was with the raiding party, or there under the search warrant," overruled the objection and allowed him to testify. The appellant contends that Klein considered himself, and must be deemed in law, to be a member of the searching party; that he gained admittance to the appellant's residence by virtue and under authority of the illegal warrant; and that under the law the evidence obtained, either directly or indirectly, by an unlawful search and seizure must be suppressed. Cases, Banks v. State, 207 Ala. 179, 93 So. 293, 24 A. L. R. 1359; Silverthorne Lbr. Co. v. U. S., 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319, 24 A. L. R. 1426, supplemented in People v. Castree, 311 Ill. 392, 143 N. E. 112, 32 A. L. R. 357; Blair Milling Co. v. Fruitiger, 113 Kan. 432, 215 P. 286, 32 A. L. R. 416.

█ It is true that if no search warrant had been issued, or, if issued, no search had been made, or if a search had been made and the information of that fact had not been communicated to him, Klein would not have entered the house and would not have seen the books. It is equally true that because there was a search and he heard of it, Klein was enabled to see the books and testify about them. To this extent there was a mental connection between the illegal search and seizure and Klein's subsequent actions. There must be an actual connection. Klein was not directly or indirectly a member of the searching party, nor did he enter the house under authority of the illegal search warrant. However unfortunate for Cohen, he entered upon invitation of one of the occupants, who, without any request from Klein, took him to the cellar where the incriminating property was concealed. Thus Klein entered and made his discovery by reason of the actions of Albus, lawful because done in his own home and lawful also because not associated with the search. The fact that Klein obtained and was allowed to produce evidence which the officers operating under an illegal search warrant obtained but could not testify to does not answer the question whether Klein's testimony should also have been suppressed. The question turns on the lawfulness of Klein's entry into Cohen's home and, when there, the lawfulness of his discovery. We

find both were lawful and the evidence was admissible.

The judgment is affirmed.