## UNITED STATES v. RICCARDI.

### No. 9745.

United States Court of Appeals
Third Circuit.

Argued Dec. 23, 1948.

Decided April 29, 1949.

Frederic M. P. Pearse, Newark, N. J., for appellant.

Charles J. Tyne, Asst. U. S. Attorney, Newark, N. J. (Alfred E. Modarelli, United States Attorney, Newark, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and Mc-LAUGHLIN and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

The defendant was indicted under 18 U.S.C. (1940 ed.) Sections 415 and 417 [1] in four counts charging him with wilfully, unlawfully and feloniously having transported or having caused to be transported in interstate commerce certain chattels of the value of $5,000 or more. The first and third counts were dismissed, and the defendant was convicted on the second and fourth counts, from which conviction he appeals.

We are not here primarily concerned with the particular fraudulent representations which the defendant made. Rather we are called upon to decide the propriety of the method utilized at the trial to prove what chattels the defendant obtained and transported, and their value. In short, the principal question is whether the witnesses who testified to these essentials were properly permitted to refresh their memory. In addition, the defendant also asserts error in the acceptance of evidence relating to the transactions between the defendant and the complaining witness, but which was not necessarily a part of the indictment.

The chattels involved are numerous items of bric-a-brac, linens, silverware, and other household articles of quality and distinction. They were the property of Doris Farid es Sultaneh, and were kept in her home at Morristown, New Jersey, from which the defendant is alleged to have transported them to Arizona in a truck and station wagon. The defendant did not deny receiving some of the lady's

---

[1] Now contained in Revised Title 18 U.S.C.A. §§ 2311 and 2314, effective September 1, 1948.

chattels, but did deny both the quantity and quality alleged. Moreover, it does not appear open to doubt that the truck made but one trip, and the station wagon three, carrying the goods in controversy.

To prove the specific chattels involved, the government relied on the testimony of Doris Farid; to prove their value, it relied on the testimony of an expert, one Leo Berlow.

Farid testified that as the chattels were being moved from the house, she made longhand notes, and that later she copied these notes on her typewriter. Only one of the original notes was produced, and became part of the evidence of the case, a search by Farid having failed to disclose the others. The government sought to have Farid testify with respect to the chattels by using the typewritten notes for the purpose of refreshing her recollection.[2] Although the defendant's objection was overruled, the government, on the next day of the trial, submitted to Farid lists of chattels taken out of a copy of the indictment, but from which had been deleted such information as dates and values.[3] With the aid of these lists, the witness testified that her recollection was refreshed[4] and that she presently recognized and could identify each item. She was then permitted to read the lists aloud, and testified that she knew that the items were loaded on the truck or station wagon, as the case was. The lists were neither offered nor received in evidence.

The expert, Berlow, testified that he had visited Doris Farid's home on numerous occasions in his professional capacity as dealer in antiques, bric-a-brac, etc.; that he was very familiar with the furnishings therein, having examined the household for the purpose of buying items from Farid or selling them for her on commission. He was shown the same lists which Farid had used to refresh her recollection, and with their aid testified that he could recall the items individually, with some exceptions; that he remembered them to the extent that he could not only describe the items, but in many instances could state where in the house he had seen them; and that he could give an opinion as to their value. This he was permitted to do.

In denying the acceptability of the evidence related, the defendant rests primarily on Putman v. United States, 1896, 162 U.S. 687, 16 S.Ct. 923, 40 L.Ed. 1118, and refers to this Court's decision in Delaney v. United States, 3 Cir., 1935, 77 F.2d 916. It is his position that the lists should not have been used because they were not made by the witnesses at or shortly after the time of the transaction while the facts were fresh in memory. It is further contended that the witnesses were not hostile to the

---

[2] At pages 114a–115a of Appellant's Appendix, the following appears:

"The Court: That isn't the question. When you look at that typewritten sheet, does that refresh your recollection as to the items therein mentioned?

"The Witness: It does.

"The Court: In what way?

"The Witness: Well, every item here—for instance: '2 Chinese vases octagonal shape Satsuma, light for mantel' I remember.

"The Court: You remember those items individually as packed?

"The Witness: Individually, each one.

"The Court: I will allow her to refresh her recollection, but I will expect you to produce the original notes."

[3] At page 136a of Appellant's Appendix it appears that government counsel began by showing to Farid a list which did not have values. At page 137a, the following appears:

"The Court: Well, I think with these evaluations cut off it is all right. This is the same paper that was shown to the witness yesterday?

"Mr. Pearse (defendant's counsel): No, sir, this is the indictment.

"Mr. Tyne (U. S. Attorney): No, sir, this is the indictment."

Following this, at the suggestion of the trial judge, the dates on the lists, to which defendant had previously objected, were cut off. The lists were then shown to the witness.

[4] For example, at page 140a of Appellant's Appendix:

"The Court: Well, Madam, as you look at that list does it refresh your recollection?

"The Witness: I lived with these things, your Honor, I know them.

"The Court: You lived with them yourself?

"The Witness: I did.

"The Court: So when you look at that paper, it does refresh your recollection?

"The Witness: Absolutely."

government, and what Farid did, in fact, was to read off the lists as proof of the actual articles loaded on the vehicles.

The government, on the other hand, asserts that the witnesses gave their independent recollection, which is admissible, albeit refreshed, because it is the recollection and not the writing which is the evidence. It goes further, and urges that where the witness has an independent recollection, anything may be used to stimulate and vitalize that recollection without regard to source or origin.[5]

■ Refreshing the recollection of a witness is not an uncommon trial practice, but as a theory of evidentiary law its content and application are far from clear. The large collection of cases found in 125 A.L.R. 19-250 [6] illustrates the point. An analysis as good and trustworthy as presently exists appears in Chapter XXVIII, 3 Wigmore on Evidence (3rd ed. 1940). Professor Wig-

more separated, broadly, what he called "past recollection recorded" from "present recollection revived",[7] attributing much of the confusion in the cases to a failure to make this distinction and to the use of the phrase "refreshing the recollection" for both classes of testimony. The primary difference between the two classifications is the ability of the witness to testify from present knowledge:[8] where the witness' memory is revived, and he presently recollects the facts and swears to them, he is obviously in a different position from the witness who cannot directly state the facts from present memory and who must ask the court to accept a writing for the truth of its contents because he is willing to swear, for one reason or another, that its contents are true.

Recognition of the basic difference between the two categories of evidence referred to is explicit in the federal [9] cases,.

[5] This is in paraphrase of Lord Ellenborough's statement in Henry v. Lee, 2 Chitty 124: "If upon looking at any document he can so far refresh his memory as to recollect a circumstance, it is sufficient; and it makes no difference that the memorandum is not written by himself, for it is not the memorandum that is the evidence but the recollection of the witness."

[6] Supplemented in the A. L. R. Blue Book of Supplemental Decisions. See also Roll v. Dockery, 219 Ala. 374, 122 So. 630, 65 A.L.R. 1478.

[7] Morgan, The Relation between Hearsay and Preserved Memory, 40 Harv.L. Rev. 712, 717–719 (1927), makes the following classification: "(1) where the witness, by some stimulus, be it memorandum or other device, has his recollection so revived as to be able to testify entirely from present memory; (2) where by a memorandum his mind is so moved that he has a present recollection of making or verifying the memorandum and of a part only of the facts therein recorded; (3) where by the aid of the memorandum he can recall only that some event occurred and that he made or verified the memorandum as a record of it; (4) where the memorandum has no effect whatever upon his present memory; it does not enable him to recollect the making or verifying of the memorandum or any of the facts set forth in it. In the first situation the memory of the witness is actually refreshed. * * * He is not asking the tribunal to believe

it because he stated it on a former occasion, but because he is now relating it under oath and subject to cross-examination. * * * If in any of the last three situations the memorandum is to be received as evidence of the unremembered matter contained in it, because, for reasons satisfactory to himself and to the court, the witness swears that its contents are true, it cannot be on the ground of refreshment of recollection. If accepted at all, it must be as a substitute for present memory. This means, in short, the reception in evidence of an extra-judicial statement as probative of the matter asserted in it."

[8] The difference is illustrated in Doe v. Perkins, 3 T.R. 749 (1790), 100 E.R. 838, in which a new trial was granted, where the witness said he had no memory of his own of certain specific facts but that his evidence was founded upon extracts he had taken from a book of items he had himself written. The case was contrasted with Tanner v. Tyler (1756), which is reported, 100 E.R. 841, to have held: "if he would swear positively to the delivery from recollection, and the paper was only to refresh his memory, he might make use of it. But if he could not from recollection swear to the delivery any further than as finding them entered in his book, then the original should have been produced: and the witness saying he could not swear from recollection the plaintiff was non-suited."

[9] Rule 26, Federal Rules of Criminal Procedure, 18 U.S.C.A.: " * * * The

although in some the distinction is obscured by the lack of necessity for it.[10] In Cohen v. United States, 3 Cir., 1929, 36 F.2d 461, 462, this Court [11] noted that the witness "testified not from her present recollection * * * but rather from her past recollection recorded". And in Delancy v. United States, 3 Cir., 1935, 77 F.2d 917, we referred with approval to Jewett v. United States, 9 Cir., 1926, 15 F.2d 955, 956, wherein the Court said:

"It is one thing to awaken a slumbering recollection of an event, but quite another to use a memorandum of a recollection, fresh when it was correctly recorded, but presently beyond the power of the witness so to restore that it will exist apart from the record."

The difference between present recollection revived and past recollection recorded has a demonstrable effect upon the method of proof. In the instance of past recollection recorded, the witness, by hypothesis, has no present recollection of the matter contained in the writing. Whether the record is directly admitted into evidence, or indirectly by the permissive parroting of the witness, it is nevertheless a substitute for his memory and is offered for the truth of its contents. It assumes a distinct significance as an independent probative force, and is therefore ordinarily required to meet certain standards.[12] These requirements are the more understandable in consideration of the fact that the court is at once desirous of determining whether

---

admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

Notes of the Advisory Committee: "* * * It (the Rule) is based on Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369, 93 A.L.R. 1136, and Wolfle v. United States, 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617, which indicated that in the absence of statute the Federal courts in criminal cases are not bound by the state law of evidence, but are guided by common law principles as interpreted by the Federal courts 'in the light of reason and experience'. The rule does not fetter the applicable law of evidence to that originally existing at common law. It is contemplated that the law may be modified and adjusted from time to time by judicial decisions. * * *"

[10] See, for example, The J. S. Warden, 3 Cir., 1914, 219 F. 517, 520–521, 15 Col.L.Rev. 468 (1915); United States v. Lonardo, 2 Cir., 1933, 67 F.2d 883, 884; Shapiro v. Pennsylvania R. Co., 1936, 65 App.D.C. 324, 83 F.2d 581, 583. In these cases, the memoranda came within certain requirements relating to past recollection recorded; hence, it was unnecessary to develop the possibility of an existing present recollection..

[11] See also United States v. Keppler, 2 Cir., 1924, 1 F.2d 315, citing The J. S. Warden, supra, note 10; cf. Monument Pottery Co. v. Imperial Coal Corp., 3 Cir., 1927, 21 F.2d 683, certiorari denied 276 U.S. 618, 48 S.Ct. 213, 72 L.Ed. 734.

[12] Generally, see 3 Wigmore on Evidence, Sections 744–755 (3d ed. 1940). Exemplary are: Putnam v. United States, 1896, 162 U.S. 687, 16 S.Ct. 923, 40 L. Ed. 1118, and Parsons v. Wilkinson, 1885, 113 U.S. 656, 5 S.Ct. 691, 28 L.Ed. 1037, (time when made); Shapiro v. Pennsylvania R. Co., supra note 10, and Jewett v. United States, 9 Cir., 1926, 15 F.2d 955, 956 (necessity for original); New York & Colorado Mining Syndicate v. Fraser, 1889, 130 U.S. 611, 620, 9 S.Ct 665, 32 L.Ed. 1031, and Goodfriend v. United States, 9 Cir., 1923, 294 F. 149 (use of copies); The J. S. Warden, supra note 10, (by whom made); Putnam v. Moore, 5 Cir., 1941, 119 F.2d 246, 248 (knowledge of truth), but cf. Parsons v. Wilkinson, supra.

It would seem that the requirement relating to time is intended to reflect the qualification of the writer to record the event, that is, whether at the time of the writing he could have had the facts in his mind. (Hutchins and Slesinger Some Observations on the Law of Evidence—Memory, 41 Harv.L.Rev. 860 (1928), contains an interesting comparison of the law with experiments in the field of psychology developing the theory that the rate of forgetting does not support the legal requirement that the writing be made soon after the event.) Superimposed is the additional safe guard that the witness state that the matter was recorded truthfully; and if he so state, it does not seem that the witness need have been the author: The J. S. Warden, supra, note 10; Monument Pottery Co. v. Imperial Coal Corp., supra, note 11. The final safeguard is that the original be produced if possible: note 8, supra.

the writing may be safely received as a substitute for the witness' memory and for the truth of the matter therein asserted, and of affording to the trier of fact information upon which it can form a reliable judgment as to its worth for the purposes offered.[13]

■ In the case of present recollection revived, the witness, by hypothesis, relates his present recollection, and under oath and subject to cross-examination asserts that it is true; his capacities for memory and perception may be attacked and tested; his determination to tell the truth investigated and revealed; protestations of lack of memory, which escape criticism and indeed constitute a refuge in the situation of past recollection recorded, merely undermine the probative worth of his testimony. It is in recognition of these factors that we find:

"The law of cotemporary writing or entry qualifying it as primary evidence has no application. The primary evidence here is not the writing. It was not introduced in evidence. It was not offered. The primary evidence is the oral statement of the hostile witness. It is not so important when the statement was made or by whom if it serves the purpose to refresh the mind and unfold the truth." Hoffman v. United States, 9 Cir., 1937, 87 F.2d 410, 411.

■ "When a party uses an earlier statement of his own witness to refresh the witness' memory, the only evidence recognized as such is the testimony so refreshed. * * * Anything may in fact revive a memory: a song, a scent, a photograph, and allusion, even a past statement known to be false. When a witness declares that any of these has evoked a memory, the opposite party may show, either that it has not evoked what appears to the witness as a memory, or that, although it may so appear to him, the memory is a phantom and not a reliable record of its content. When the evoking stimulus is not itself an account of the relevant occasion, no question of its truth can arise; but when it is an account of that occasion, its falsity, if raised by the opposing party, will become a relevant issue if the witness has declared that the evoked memory accords with it. * * *" United States v. Rappy, 2 Cir., 1947, 157 F.2d 964, 967–968, certiorari denied 329 U.S. 806, 67 S.Ct. .501, 91 L.Ed. 688.

See also, Jewett v. United States, supra; cf. Nicoli v. Briggs, 10 Cir., 1936, 83 F.2d 376, 378; Gray v. United States, 8 Cir. 1926, 14 F.2d 366, 367–368.

It is important to note that Putman v. United States,[14] supra, on which the defendant relies, does not distinguish between past recollection recorded and present recollection revived.[15] Insofar as the condition of contemporaneity is concerned, that decision is no longer construed as stating an unyielding rule. United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 236, 60 S.Ct. 811, 850, 84 L.Ed. 1129.[16] Moreover, although the Court in the latter case was considering a stituation of present recollection, it did not find itself faced with an issue, as here, outside the scope of the Putman case: it was sufficient, as the Court construed that decision, to hold that "within the rule of the Putman case", the "prior statement made under oath was reasonably calculated to revive the witness' present recollection", and the application of this test was left to the discretion of the trial judge.

■ Since the purpose of the writing is to activate the memory of the witness, there is always the possibility, if not probability, that the writing will exert a strong influence upon the direction of the memory, that is, the nearer the writing to the truth, the lesser the deviation of the witness'

---

[13] Morgan, op.cit.supra, note 7, at page 721.

[14] Followed in Chase v. United States, 6 Cir., 1926, 13 F.2d 847, and Nardi v. United States, 6 Cir., 1926, 13 F.2d 710, 40 Harv.L.Rev. 330 (1926).

[15] But cf. Tibbitts-Hewitt Grocery Co. v. S. E. Lux, Jr., Mercantile Co., 8 Cir., 1925, 5 F.2d 549, 551.

[16] The adverse criticism of Putnam v. United States by Professor Wigmore, 3 Wigmore on Evidence, Section 761, note 5, p. 108 (3rd ed. 1940), was specifically referred to by the Court in United States v. Socony-Vacuum Oil Co.; as to the effect of the latter decision on the Putnam case, see Fanelli v. United States Gypsum Co., 2 Cir., 1944, 141 F.2d 216, and Morgan, The Law of Evidence, 1941–1945, 59 Harv.L.Rev. 481, 515, note 128 (1946).

memory from the truth. But this is not a binding reason for insistence upon establishing the reliability of the writing previous to permitting the witness to state whether his memory is refreshed. The reception of a witness' testimony does not depend upon whether it is true; truth is a matter for the trier of fact unless, of course, the evidence is so improbable that reasonable men would not differ upon it. When the witness testifies that he has a present recollection, that is the evidence in the case, and not the writing which stimulates it. If his recollection agrees with the writing, it is pointless to require proof of the accuracy of the writing, for such proof can only amount to corroborative evidence. The testimony is received for what it is worth. New York & Colorado Mining Syndicate v. Fraser, 1889, 130 U.S. 611, 620, 9 S.Ct. 665, 32 L.Ed. 1031. And the testimony should be received if it is capable of a reasonably satisfactory evaluation. Undoubtedly, the nature of the writing which the witness says is effective to stimulate his memory plays a part in that evaluation, and the dangers from deficiencies in the witness' testimonial qualifications are not less susceptible of evaluation by the trier of fact than in the case of past perception recorded; indeed, they are more readily subject to test, for the witness, as already noted, asserts a present memory and cannot gain protection from a denial of the very memory which he claims to have.

Of course, the categories, present recollection revived and past recollection recorded, are clearest in their extremes, but they are, in practice, converging rather than parallel lines; the difference is frequently one of degree. Moreover, it is in complication thereof that a cooperative witness, yielding to suggestion, deceives himself, that a hostile witness seizes an opportunity, or that a writing is used to convey an improper suggestion. Circumstances,[17] or the nature [18] of the testimony, may belie an assertion of present memory; more often the credibility of the witness generally, and the cross-examiner's attack upon the reliability of his memory, will decide the claim to an independent recollection.

Properly, the burden to ascertain the state of affairs, as near as may be, devolves upon the trial judge, who should in the first instance satisfy himself as to whether the witness testifies upon a record or from his own recollection. It is upon this satisfaction that the reception of the evidence depends, for if it appear to the court that the witness is wholly dependent for the fact upon the memorandum he holds in his hand, the memorandum acquires a significance which, as stated, brings into operation certain guiding rules. Similarly, the trial judge must determine whether the device of refreshing recollection is merely a subterfuge to improperly suggest to the witness the testimony expected of him. It is axiomatic, particularly with respect to the reception of evidence, that much depends upon the discretion of the trial judge. This is not a new occasion for the exercise of that discretion: Buckley v. United States, 6 Cir., 1929, 33 F.2d 713, 717; United States v. Lonardo, 2 Cir., 1933, 67 F.2d 883, 884; Hoffman v. United States, 9 Cir., 1937, 87 F.2d 410, 411; United States v. Graham, 2 Cir., 1939, 102 F.2d 436, 441, certiorari denied 307 U.S. 643, 59 S.Ct. 1041, 83 L.Ed. 1524. Exemplary of the broad discretion in the trial judge is United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 233–234, 236–237, 60 S.Ct. 811, 84 L.Ed. 1129.

In the instant case, the learned trial judge determined that both Farid and the expert, Berlow, testified from present recollection. On the record, we cannot say that it was plainly not so. Both witnesses stated that they knew the chattels and could identify them. Farid, who testified that she was present and helped to pack them,[19] said she could remember which were transported; Berlow said he could give an opinion of their value. On a number of occasions the

---

[17] For example, in Jewett v. United States, supra, note 12, the court found that the witness misapprehended; and see United States v. Keppler, supra, note 11.

[18] For example, Weigel v. Powers Elevator Co., 1923, 49 N.D. 867, 194 N.W. 113.

[19] It may be noted, parenthetically, that Farid was corroborated in this respect, and one witness stated that he had seen her making an inventory while the chattels were being moved.

trial judge investigated the foundations of their claim to present recollection and satisfied himself as to its bona fides. The case is, therefore, distinguishable from Jewett v. United States, supra, wherein it was held that the witness had no independent recollection, and from Delaney v. United States, supra, where the Court concluded that the witness did no more than read from a photostatic copy. While the defendant asserts that neither Farid nor Berlow did more, the trial judge immediately recognized that the items of property involved were so numerous that in the ordinary course of events no one would be expected to recite them without having learned a list by rote memory. On the other hand, the items were such that a person familiar with them reasonably could be expected to recognize them and tell what he knows.[20] Under these circumstances, the District Judge might well have permitted the government, in lieu of the procedure followed, to ask Farid leading questions, directing her attention to specific items, and asking her whether she knew what happened to them. This is especially true of Berlow, who did not purport to have any knowledge of the movement of the articles. Clearly, it would have been pointless to ask him to give the value of every article he had ever seen in Farid's home. The same result could have been achieved legitimately without the use of the lists by orally directing his attention to any specific aritcle previously identified by Farid and asking him whether he had seen it, presently remembered it, and could give an opinion as to its value. By the use of lists, nothing more or different was accomplished.

Moreover, we think the procedure followed lay within the discretion of the trial court, and that no prejudicial error ensued. The evidence was capable of a reasonably satisfactory evaluation and was receivable for what it was worth. In the long run, the primary issue of the case was that of credibility, and it is sufficient that the jury had as sound a basis for weighing the testimony as it would in any other instance. The defense had at its disposal the customary opportunities and all the necessary material to test the witness' recollection and other testimonial qualifications, including the single original longhand list which Farid located, the typewritten lists which she said were made at the time of the events involved, and the lists the prosecution used. It might very well have put Farid through severe cross-examination with respect to each chattel she identified on direct examination, but chose instead to attack the reliability of her memory by other means.

Accordingly, it is our conclusion that the learned trial judge did not abuse his discretion, either in determining that the witnesses testified from present recollection, or in permitting the use of the lists described herein.

▮ Finally, the defendant contends that the trial court erred in permitting rebuttal evidence pertaining to the jewelry and stock transactions between Farid and the defendant. The matter of rebuttal evidence, however, is one committed to the sound discretion of the trial judge. While the evidence with respect to the jewelry and stocks might have been omitted, it is nevertheless clear that those transactions were part and parcel of the relations between the two people. Some of it was necessarily brought out on direct examination in the course of Farid's narration of the conversations and activities of both of them. A great deal more was included in the record by the defendant himself on his direct examination. We cannot say, therefore, that there was an abuse of discretion or prejudicial error in receiving the evidence, especially since, in the charge to the jury, that evidence was unmistakably restricted to the important issue of credibility alone.

For the reasons stated, the judgment of the District Court will be affirmed.

---

[20] Cf. DePalma v. Weinman, 1909, 15 N.M. 68, 103 P. 782, 786, 24 L.R.A.,N.S., 423, affirmed 1914, 232 U.S. 571, 575, 34 S.Ct. 370, 58 L.Ed. 733.